# The Albany City Insurance Co., for use, *versus* Whitney *et al.*

1. In a foreign attachment in the Common Pleas by an insurance company, bail was entered and the attachment dissolved. The declaration was in assumpsit and averred, that goods had been shipped by the defendants and the vessel had been wrecked on one of the "Great Lakes;" that the plaintiff came to the wreck with the necessary appliances to remove the cargo, tackle, furniture, &c., and that whilst at the wreck prepared to remove the cargo, &c., the defendants offered to receive the cargo and pay its proper proportion of the expenses incurred by the plaintiffs; and that the "proportion of the charges and expenses occasioned thereby and by the salvage of the rigging, furniture, &c., and of the cargo * * * which should be apportioned on the cargo was," &c., and that defendants received the cargo and agreed to pay such proportion, &c." The defendants pleaded in abatement that the cause of action occurred on the "Great Lakes and within the maritime jurisdiction of the United States and being a claim for salvage," the jurisdiction was exclusive in a court of admiralty and the Common Pleas had no jurisdiction. *Held,* that the action being on a *contract* to pay, it was within the saving of the 9th sect. of Federal Judiciary Act of February 20th 1789, and the common-law court had jurisdiction.

2. The peculiar and exclusive jurisdiction is when the proceedings are

*in rem :* remedies *in personam* are concurrent, when there is ground to maintain a common-law action.

3. A benefit or service performed voluntarily is a consideration to support an express promise.

4. The saving in 9th sect. in Act of Congress, February 20th 1789 (Judiciary Act), is of a common-law remedy.

5. Common-law courts and admiralty have concurrent jurisdiction on charter-party, bill of lading, shipping articles and policy of marine insurance.

6. Foreign attachment is process to commence a personal action and compel an appearance; when dissolved by bail, the judgment is *in personam.*

7. On the *scire facias* against the garnishee, on the plea of "*nulla bona*," he may show that the property attached is not the defendant's but the garnishee's or some other person's.

8. The court should not proceed on a plea in abatement without replication or demurrer.

November — 1871.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county :* No. 124, to October and November Term 1871.

On the 20th of June 1870, a foreign attachment in assumpsit was issued out of the Court of Common Pleas of Erie county, at the suit of the Albany City Insurance Company to the use of George P. Griffith against Charles Whitney and others, trading as C. & D. Whitney, Jr., & Co., bail to dissolve $1200.

Under the writ the schooner "Grace Whitney" was attached, and Captain Lewis Elliott summoned as garnishee. Bail was entered, and the attachment dissolved. The declaration filed by the plaintiff was as follows :—

"Charles Whitney, &c., were attached by their goods and chattels, and summoned to answer the Albany City Insurance Company, now for use of George P. Griffith, in a plea of trespass on the case in assumpsit, and thereupon the said plaintiffs, by their attorney, J. C. Sturgeon, complains, for that heretofore, to wit, on the 24th day of June, A. D. 1870, divers goods of great value, had been and were shipped and loaded by defendants on board the schooner Monteagle, to be carried to Ogdensburg, in the state of New York, on and for freight in and during the said voyage. And the plaintiff further saith, that afterwards, and during said voyage, to wit, on the great lakes, the said vessel, and the tackle and apparel thereof, by and through the mere force and violence of certain hurricanes of wind and stormy weather, and by the perils and dangers of the seas, became greatly strained, &c., whereby and because thereof, the said vessel was driven on rocks and shoals and wrecked, so as to make her utterly unable to proceed upon her said voyage. And that afterwards, &c., plaintiffs did come with a wrecking-tug, men, and all the necessary appliances for the removal of the cargo, tackle, furniture, anchors, cables, &c., from the wreck of the schooner Monteagle as aforesaid; and that at that time, and while plaintiffs being

then and there prepared for the removal of the said cargo as afore-
said, the said defendants came and offered to receive the said cargo,
and then and there agreed to pay plaintiffs such proportion of the ex-
penses incurred by them as should be apportioned upon the said
cargo, the said sum of expenses amounting to the sum of $1082.42,
and in consequence of which said several promises to pay, then and
there, said proportion of the charges and expenses occasioned there-
by, and by the salvage of the rigging, furniture, anchors, cables, &c.,
and of the cargo of the schooner Monteagle, which should be appor-
tioned on the cargo saved from the said vessel, the said defend-
ants did then and there receive the said cargo amounting to 50,000
feet of black-walnut lumber, of great value, &c., and then and
there did agree to pay the said share of the expenses apportioned
on the said cargo as aforesaid, and in consequence thereof did
then and there become liable to pay the said plaintiffs the sum of
$900, being the amount assessed upon the said cargo by virtue of
the agreement as aforesaid.

" And the said plaintiff further says that afterwards and whilst
the said vessel Monteagle was proceeding on her said voyage, &c.,
loaded with black-walnut lumber, the property of defendants; she
was by the violence of the winds and waves driven on shoals and
reefs and stranded, being damaged thereby so as to be incapable
of further proceeding on her said voyage, and whilst the plaintiffs
were engaged in unloading the said cargo, having tug, men, cables,
and all the necessary appliances therefor, the defendants appeared
and received the said cargo consisting, &c., and then and there
agreed to pay to plaintiffs such proportion of the plaintiffs' ex-
penses in proceeding to the said wreck for the purposes aforesaid,
as should be assessed upon the cargo so saved, by an adjustment
of the said expenses between the vessel and cargo, amounting to
the sum of $1082.42, and the said defendants then and there, ac-
cording to their said undertaking, did become liable to pay, and
then and there should have paid to plaintiffs a certain sum of
money, to wit, &c., being their proportion of the salvage, adjust-
ment, &c., as aforesaid; yet the said defendants afterwards, dis-
regarding their promises so made, have not paid any part of the
said moneys to plaintiffs," &c.

The defendants filed a plea in abatement, viz. :—

" The said defendants come, &c., and say that this court ought
not to have or take further cognisance of the action aforesaid,
because they say that the said supposed cause of action, and each
and every of them, originated on the great lakes and within the
maritime jurisdiction of the United States, and being a claim for
salvage, and is exclusively the subject of investigation in a court
of admiralty, and not in a state court, and this court has no
jurisdiction on the subject-matter, and this the said defendants
are ready to verify; whereupon they pray judgment whether this

court can or will take further cognisance of the action aforesaid."

There was no demurrer or replication to this plea.

After argument the court quashed the writ and all subsequent proceedings.

The plaintiffs removed the record to the Supreme Court, and assigned the quashing of the writ, &c., for error.

*J. C. Sturgeon* and *C. B. Curtis*, for plaintiff in error.—The suit is on a contract; it is not for salvage; it is within the saving of the Act of Congress of September 24th 1789, § 9, 1 Brightly's U. S. Dig. 24, pl. 1; The Golden Gate, 1 Newberry Adm. Rep. 302; Hine *v.* Trevor, 4 Wall. 271; The Belfast, 7 Id. 463.

*J. C. Marshall* (with whom was *F. F. Marshall*), for defendant in error.—Salvage is to be determined by a court of admiralty: 3 Kent's Com. 245; 2 Pars. on Mar. Law. 595. The services, whether voluntary or by request, and contract and compensation, relate to salvage: 1 Conkling's Adm. 350; Abbott on Shipping 399. The admiralty jurisdiction is extended to the lakes: Act of Congress, February 20th 1845, § 1, 1 Brightly's U. S. Dig. 25, pl. 3; Genesee Chief *v.* Fitzhugh, 12 How. 452; Jackson *v.* The Magnolia, 20 Id. 300.

The opinion of the court was delivered, January 9th 1873, by

SHARSWOOD, J.—The declaration was in assumpsit upon an agreement by the defendants in consideration of the delivery to them of the cargo of a certain wrecked vessel by the plaintiffs, who were the salvors, to pay them such proportion of the expenses incurred as should be apportioned upon the said cargo, and averring an adjustment accordingly. To this the defendants pleaded in abatement that the cause of action originated on the great lakes, and within the marine jurisdiction of the United States, and being a claim for salvage, was exclusively the subject of investigation in a court of admiralty. To this plea, as far as appears by the record, there was neither replication nor demurrer. Upon it there was, therefore, no issue either of law or fact. Yet the court proceeded to enter judgment. No objection has been made on this ground here, and it is mentioned only to say that we disapprove of such loose practice. Had it been assigned for error it would have been sufficient ground itself for the reversal of the judgment.

Assuming, however, that the plea was orally demurred to, and so the case has been presented and argued here, we think that the learned court below erred in sustaining the plea, and entering the judgment quashing the writ and the subsequent proceedings.

[Albany City Insurance Co. *v.* Whitney.]

The cases of The Moses Taylor, 7 Wall. 411, and The Belfast, 7
Id. 624, have settled that the common-law courts cannot exercise
any portion of the admiralty jurisdiction, which is vested by the
Constitution of the United States and the 9th section of the
Judiciary Act of September 24th 1789 (1 Story's Laws U. S. 56)
exclusively in the Federal courts. But these cases also establish
that the distinguishing and characteristic feature of a suit in
admiralty, so far at least as the jurisdiction is intended to be
exclusive, is that the vessel or thing proceeded against itself is
seized and impleaded, and is judged and sentenced accordingly.
On the other hand, by the common-law process property is
reached only through some person as a defendant, and then only
to the extent of his title. What is peculiar to admiralty and
exclusive are proceedings *in rem*. Remedies *in personam* are
concurrent wherever a ground can be laid sufficient to maintain a
common-law action. It may be that such an action would not lie
for salvage without a promise to pay, because being a voluntary
service, performed without previous request, there is no sufficient
consideration to support an implied assumpsit. But a benefit
conferred or service rendered, though purely voluntary, is suffi-
cient consideration to support an express promise: Graves *v.*
McAllister, 2 Binn. 591; Clark *v.* Herring, 5 Binn. 33; Cun-
ningham *v.* Garvin, 10 Barr 366; Lycoming *v.* Union, 3 Harris
166. The 9th section of the Federal Judiciary Act of 1789 con-
tains an express "saving to suitors in all cases of the right of a
common-law remedy, where the common law is competent to give
it." This saving indeed does not authorize a proceeding *in rem*
to enforce a maritime lien in a common-law court. It is not any
remedy in a common-law court which is saved, but only a com-
mon-law remedy. But surely no one will pretend that covenant,
debt or assumpsit will not lie at common law on a charter-party,
bill of lading, shipping articles or policy of insurance. Yet these
are all within the admiralty jurisdiction. The Supreme Court of
the United States have affirmed the broad doctrine of Mr. Justice
Story in De Lovio *v.* Boit, 2 Gallison 398; Ins. Co. *v.* Dunham,
11 Wall. 1, holding that the contract of marine insurance is a
maritime contract within the admiralty and maritime jurisdiction,
though not within the exclusive jurisdiction of the United States
courts. The proceeding below, though commenced by the pro-
cess of foreign attachment, was not instituted to enforce a maritime
lien. It would not have been so had the cargo saved been
attached. That which was attached was the schooner Grace
Whitney, as the property of the defendants. Foreign attachment
is but a process by which to commence a personal action. It
seizes property to compel an appearance. It can be dissolved
upon entering bail, and when dissolved, the judgment against the
defendant is *in personam*. It is followed by a proceeding against

the garnishee by writ of scire facias, in order to subject the property attached to execution as the property of the defendant. The garnishee may plead *nulla bona*, and show that it is not the property of the defendant, but of himself or some third person. In this case the attachment was dissolved by the entry of security for the demand of the plaintiff. It was therefore a common-law remedy, the same as if it had been commenced by a summons— an action of assumpsit upon a parol contract, pursued *in personam*, and strictly within the saving of the 9th section of the judiciary Act of 1789.

Had there been a demurrer to the plea in abatement, the proper judgment would have been a judgment of *respondeat ouster*. We remand the record with a *procedendo*, in order that a demurrer may be properly filed, and judgment of *respondeat ouster* entered thereon, unless the defendants should prefer to withdraw their plea.

Judgment reversed, and <em>procedendo</em> awarded.