## Yung's Estate.

|199  35|
|s199  40|

*Decedents' estates—Vacating decree of distribution—Practice, O. C.*

Where administration is granted to a husband on representations by himself and his wife that the wife was sole next of kin of the decedent, and such representations are repeated in the petition for distribution, and it appears that they were false, and that the other next of kin knew nothing of the proceedings, the orphans' court, may, after the expiration of seven years from the decree of distribution, vacate the same, and order distribution so as to include all of the next of kin of the decedent. The latter order is binding upon the surety of the administrator, although he was not present when it was made.

*Decedents' estates—Distribution—Evidence of kinship.*

On a petition for distribution of a decedent's estate, it is proper to admit in evidence a certificate entitled "a certificate of inheritance," from which it appears that upon the strength of statements made by certain persons who appeared before a grand duchal district court of the German empire, it was officially certified by the grand duchal district judge and the clerk of the court, under its seal, that the relationship claimed by the petitioner had been established; and this is the case even if the certificate fails to show affirmatively that the witnesses called were sworn.

Argued Jan. 15, 1901. Appeal, No. 290, Jan. T., 1900, by John Ruhl, from decree of O. C. Phila. Co., April T., 1891, No. 279, awarding redistribution in the Estate of Sophia Yung, Deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Petition for bill of review.

The facts are fully stated in the opinion of the Supreme Court.

The court entered the following decree:

The decree heretofore made on the adjudication of account of administrator is vacated and set aside, and it is ordered and decreed that adjudication be opened, and of the balance for distribution shown adjudication, one third thereof, or $832.61, is awarded to Johann Kreb, nephew; one sixth, or $416.36, to Christina Kreb, grandniece; one sixth, or $416.30, to Daniel Groh, grandnephew; interest from June 1, 1891.

*Error assigned* was the decree of the court.

*Leoni Melick*, of *Melick, Potter & Dechert*, for appellants.— The certificate does not show that any witnesses were sworn, and there was no opportunity for cross-examination.

Before a declaration of pedigree can be admitted in evidence, the relationship of the declarant de jure by blood or marriage must be established by some proof independent of the declaration itself : Plant v. Taylor, 7 H. & N. 211 ; Hitchins v. Eardley, L. R. 2 Probate & Divorce, 248.

To let in the declarations of third persons in case of pedigree, it must be shown that they are dead : White v. Strother, 11 Ala. 720 ; Braintree v. Hingham, 1 Pick. 245.

Hearsay evidence in matters of pedigree is confined to the declarations of deceased members of a family made ante litem motam : Wharton's Evidence, sec. 213, etc.; Best on Evidence, sec. 498 ; Strickland v. Poole, 1 Dall. 14.

Declarations of a third person who can be called as a witness cannot be given in evidence to prove pedigree : Jones v. Letcher, 13 B. Mon. (Ky.) 363 ; Wharton on Evidence, sec. 215.

*Gustavus Remak, Jr.*, for appellee.—It is perfectly clear under George's Appeal, 12 Pa. 260, Young's Appeal, 99 Pa. 74, Milne's Appeal, 99 Pa. 483, Johnson's Appeal, 114 Pa. 132, and Washburn's Estate, 187 Pa 162, that the right of the orphans' court to grant relief relating solely to the decree of distribution exists apart from the act of 1840, especially, as ruled in Whelen's Appeal, 70 Pa. 410, where an unconscionable advantage has been taken of a distributee.

The certificate was properly admitted : Hyam v. Edwards, 1 Dall. 1 ; Douglass v. Sanderson, 1 Yeates, 15 ; Kingston v. Lesley, 10 S. & R. 383 ; Winder v. Little, 1 Yeates, 152 ; Larkins's Est., 6 Pa. Dist. Rep. 766.

OPINION BY MR. JUSTICE BROWN, April 1, 1901 :

Sophia Yung died April 19, 1890, intestate, unmarried and without issue. On April 29, 1890, letters of administration on her estate were granted to John Ruhl, one of the appellants. These letters were issued to him upon his petition to the register of wills, setting forth that Magdelina Ruhl was the only sister and next of kin of the deceased, which statement she also made in her renunciation of her right to administer. On July 2,

1891, upon the petition of John Ruhl, the appellant, supported
by his affidavit that his wife, the said Magdelina Ruhl, as the only
next of kin of the deceased, was entitled to receive the balance in
his hands as administrator, after the payment of a bill presented
for boarding by the Board of Charities and Corrections of Phila-
delphia, the same, amounting to $2,497.83, was awarded to her
by the court below.    On December 30, 1899, the petition of
the appellees was presented to the court, setting forth that they
were, at the time of the death of the decedent, respectively, her
nephew, grandniece and grandnephew, entitled to participate in
the distribution of her estate; that they all resided in the Ger-
man Empire, and had never been within the United States; that
they had not been aware of the death of the said Sophia Yung,
at the time when the same occurred, nor had any of them learned
that letters of administration upon her estate had been granted to
the said John Ruhl, nor that he had filed his account, nor that
the same had been audited and an adjudication made thereon,
until about the time their petition was presented.    A citation was
then issued, directed to the appellant and his wife, to show cause
why the decree awarding the entire balance of the estate to the
latter should not be vacated and readjudication made, which
would include the appellees in the distribution.    The respond-
ents filed answers, and testimony was subsequently taken be-
fore an examiner, in the light of which the court below found
that the appellees were related to the deceased, as set forth in
their petition, and entitled to distributive shares in her estate.
Misrepresentation was made to the register in the first instance
by Ruhl and his wife in their statement that she was the only
next of kin of her deceased sister, and the award of the whole
estate to her was procured by a misstatement to the court,
made by the administrator under oath, who was the husband of
the woman claiming it.    The conclusion cannot be fairly
reached that these misrepresentations were not made with the
deliberate intention of excluding the appellees from their in-
heritance; on the other hand, it rather seems that the adminis-
tration of the estate commenced in an intentional fraud upon
the register, and culminated, if the first adjudication is to stand,
in imposition upon the court.    Whatever the real motives of
Ruhl and his wife may have been, it is sufficient to know that
the former, by his misstatement to the court, induced it to

make a decree in the first instance, the effect of which was to deprive the appellees of their shares in the estate of their deceased aunt and give it all to the wife of the administrator. To remedy the injustice so done by the first adjudication, it was set aside, and, the court having found that the distribution ordered by it had never been made, restitution by Magdelina Ruhl, was not directed, but the distribution now complained of was ordered to be made by the administrator.

On this appeal, no question seems to be raised as to the power of the court to vacate the decree made in the first adjudication and to make the present one, which includes these appellees in the distribution, provided they have, by sufficient evidence, established their relationship to the deceased. The sole ground for reversing the decree, as presented on the argument, is, that the relationship of the appellees has not been legally established. If it is established, no other question can be fairly raised. In the exercise of its equitable powers, and controlled by equitable principles, the orphans' court, when invoked for equitable relief in a case calling for it so loudly and so justly as the one now before us, will extend it independently of any statute. We need, therefore, do no more than pass upon the sufficiency of the evidence offered in support of the relationship which the appellees claim they sustained to the deceased, and this can be done in a few words.

The testimony of witnesses called before the examiner was sufficient, unaided by the certificate of inheritance from the grand duchal district court in Oppenheim, to establish the relationship of Christina Korb and Daniel Groh as the grandniece and grandnephew of the deceased, and nothing more need be said as to them. Without the certificate of inheritance, it is admitted that sufficient testimony had not been offered to prove that Johann Krebs, one of the appellees, is a son of Anna Marie Krebs, a deceased sister of Sophia Yung. This certificate is entitled "a certificate of inheritance," and, upon the strength of statements made by certain persons who appeared before the grand duchal district court in Oppenheim, it was officially certified by the grand duchal district judge and the clerk of the court, under its seal, that the relationship claimed by Johann Krebs had been established. It is manifest, from an inspection of the certificate, that this foreign court undertook to determine who

were the heirs of Sophia Yung, and it has solemnly certified the result of its investigation. It must be presumed that the proceedings in that court were conducted in conformity to the law there regulating them, and that, if conducted for the purpose of ascertaining who would be entitled to receive the estate of the deceased, if distributed within its jurisdiction, its findings as to her next of kin were correct. If the court was satisfied there that Johann Krebs was a nephew of the deceased, its certificate, in proper form, of such relationship was prima facie sufficient for the court here. There is no presumption that the witnesses called were not sworn and that their testimony was not given according to law, even if the certificate fails to show affirmatively that they were sworn. As far back as Lessee of Hyam v. Edwards, 1 Dall. 1, a copy of the register of births and deaths of people called Quakers in England, proved to be a true one before the Lord Mayor of London was allowed to be given in evidence to prove the death of the person; and in Douglass v. Sanderson, 1 Yeates, 15, the leaf of a Bible said to have belonged to Charles McMichael in his lifetime, sworn to before the chief burgess and notary public of the borough of Wilmington, in Delaware, by some of the heirs of the said McMichael (as they would on no account part with the original book), and which was extracted from the said book in the presence of the said burgess and notary, and so certified by him in the affidavit, under the notarial seal, on which were entered the several births and deaths of his children, was read in evidence to the jury and held to have been properly admitted. In Kingston v. Lesley, 10 S. & R. 383, a copy of the register of marriages, baptisms and burials of the parish of St. Michael, in the island of Barbadoes, certified to be a true copy by the rector of the parish, and proved by the oath of Samuel Berresford, taken before John A. Beckles, deputy secretary of the island and notary public, his handwriting and office having been proved, and the handwriting of the rector having also been proved, was held good evidence to prove pedigree, and TILGHMAN, C. J., said: "The real motive which induced the court to admit the evidence was the difficulty and expense of procuring evidence from beyond the sea. . . . Considering all the authorities, then, we must take it that the case of Hyam v. Edwards is law." Bearing on its face a stronger claim to the dignity of evidence than either of the papers re-

ferred to in the foregoing cases, this certificate of inheritance was received by authority and could not have been rejected in reason.

The sureties on the administration bond of Ruhl have united with him in this appeal. This they may do; but the decree that fixed the liability of the trustee, for whose fidelity they vouched, determined theirs. When they became bound for him, they assumed the risk of a decree against him, the consequences of which might fall upon them. Though they were not heard in the proceedings in which it was made, if made properly there, with the trustee heard, or given an opportunity to be heard, their liability is inevitable upon his default.

This record is free from error. The decree below was properly made; the appeal from it is dismissed at appellants' costs, and it is now affirmed.