# Commonwealth to use *v.* A. B. Baxter and Company, Inc., Appellant.

*Principal and surety—Bond—Foreign attachment—Amendment—Cause of action—Damages—Different measure of damages—Judgment—Foreign corporation—Act of March 20, 1845, P. L. 188—Act of March 30, 1905, P. L. 76.*

1. The rule that a judgment against the principal in a bond is conclusive against his sureties applies to bonds of administrators and guardians, bonds of assignees for the benefit of creditors, official bonds, bonds of indemnity and other bonds of like character, but it does not apply in the case of a bond given to dissolve a foreign attachment.

2. Where a bond is given under the Act of March 20, 1845, P. L. 188, to dissolve a foreign attachment, and the condition of the bond is to "pay the debt or damages, interest and costs that may be recovered," the amount of the debt or damages that may be recovered from the surety is measured by the sum demanded in the affidavit of the cause of action. If after the filing of the affidavit the plaintiff thinks proper to increase his claim for damages by amendment, the sureties are not discharged from all liability by such amendment, but will be required to pay the damages liquidated by the plaintiff in the original affidavit of the cause of action, together with interest and costs.

3. The original cause of action in a foreign attachment cannot be amended after the bond has been filed by introducing a new cause of action, or by substituting a different measure of damages.

4. In a foreign attachment brought against a broker by his customer, where the plaintiff in his original affidavit of cause of action, claims the difference between the purchase price of stocks, and the highest price at which the same stocks sold up to the final filing of the statement, and he subsequently amends his claim so as to give him the right to recover upon the basis of the highest selling price of the stocks up to the time of trial, the sureties are not bound by such amendment.

5. Under the Act of March 30, 1905, P. L. 76, a foreign attachment may be issued in all actions ex contractu including an action for unliquidated damages, and in actions ex delicto for tort committed within the Commonwealth. The Act of 1905, applies to foreign corporations inasmuch as it must be read into the Act of June 13, 1836, P. L. 568, the 76th section of which provides for a writ of foreign attachment against foreign corpora-

tions, although the Act of 1905 purports to amend only Section 44 of the Act of 1836.

Argued Oct. 24, 1911. Appeal No. 200, Oct. T., 1911, by defendants, from order of C. P. No. 4, Allegheny Co., Second Term, 1911, No. 554, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Commonwealth to use of Charles A. Gettman v. A. B. Baxter and Company, Inc., John Newell and Eugene P. Whitcomb. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a bond given to dissolve a foreign attachment.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*John S. Ferguson* and *John G. Johnson,* with them *William Hunter* and *Eugene Mackey,* for appellant.—

A surety or guarantor is a favorite of the law and has a right to stand upon the strict terms of his obligation, when such terms are ascertained: Moreland Sch. Dist. v. Picker, 14 Montg. County Law Repr. 85; St. Peter's & St. Paul's Greek Church v. Bohinski, 11 Kulp, 164; Bank of Washington v. Barrington, 2 P. & W. 27.

This appellee has overreached himself and has discharged his bondsmen: Jamieson v. Capron, 95 Pa. 15; Wilhelm's App., 79 Pa. 120; Grier Bros. v. Assurance Co., 183 Pa. 334.

An amendment will not be permitted where it prejudices the opposing party: Riley v. Prudential Ins. Co.,

12 Pa. Super. Ct. 561; Sener v. McCormick, 15 Pa. Super. Ct. 588; Good Roads Machinery Co. v. Old Lycoming Twp., 25 Pa. Super. Ct. 156.

What was done in Gettman's foreign attachment was to introduce a new or additional cause of action: Davis v. N. Y., L. E. & W. R. R. Co., 110 N. Y. 646 (17 N. E. Repr. 733); Hurst v. Detroit City Ry. Co., 84 Mich. 539 (48 N. W. Repr. 44); Wilson v. Jamieson, 7 Pa. 126; Hoboken v. Gear, 27 N. J. Law 265; Allen v. Allen, 23 W. N. C. 371; Moore v. Spackman, 12 S. & R. 287; Coleman's App., 75 Pa. 441; Albany City Ins. Co. v. Whitney, 70 Pa. 248; Robeson v. Thompson, 9 N. J. Law 97; Scovill v. Blasner, 79 Mo. 449; Skowhegan Bank v. Cutler, 49 Me. 315; Liggett v. Ladd, 23 Ore. 26 (31 Pac. Repr. 81).

Whilst there is a liberal allowance of amendments in this state in favor of plaintiffs who may have made some inadvertent mistake, no such liberality should be permitted where the same will work hardship to third persons: Willis v. Crooker, 18 Mass. 204; Weller v. Hanaur, 10 Pa. D. R. 123.

*Joseph A. Langfitt,* with him *H. W. McIntosh* and *William Kaufman,* for appellee.—The liability of the appellants for the full amount of the recognizance in suit has certainly become fixed and absolute: Fetterman v. Hopkins, 5 Watts 539; Bierce v. Waterhouse, 219 U. S. 320; Jamieson v. Capron, 95 Pa. 15; Bank of Montgomery v. Reese, 26 Pa. 143; Learock v. Paxson, 208 Pa. 602.

An increase in the ad damnum is not a change of the cause of action: Tassey v. Church, 4 W. & S. 141; Trego v. Lewis, 58 Pa. 463; Stainer v. Royal Ins. Co., 13 Pa. Superior Ct. 25; Todd v. Quaker City Mut. Ins. Co., 9 Pa. Superior Ct. 381; Bierce v. Waterhouse, 219 U. S. 320; McNeilly v. Driscoll, 94 N. E. Repr. 273; Dunn v. Mayo Mills, 134 Fed. Repr. 804; Jamieson v. Capron, 95 Pa. 15; Hackett v. Carnell, 106 Pa. 291;

Townsend Nat. Bank v. Jones, 151 Mass. 454 (24 N. E. Repr. 593); Vansciver v. Churchill, 35 Pa. Superior Ct. 212.

OPINION BY MR. JUSTICE ELKIN, February 26, 1912:

This is an appeal by the sureties on a bond given to dissolve a foreign attachment. The principal defendant, a foreign corporation organized for the purpose of conducting a brokerage business, was brought into the court below on a writ of foreign attachment. The amount of the bank deposit attached, expressed in even numbers, was $8,000.00; the margins called by the brokers, and paid by Gettman on his speculative account, were $23,000.00; the liquidated damages claimed, being the sum demanded at the time the writ issued, were $33,000.00; the penalty of the bond given to dissolve the attachment was fixed at $65,000.00, about double the sum demanded in the cause of action; and by reason of an amendment to the original statement of claim allowed after the bond was filed, which amendment substituted a different measure of damages, judgment was obtained for $89,000.00. In other words, Gettman, with $23,000.00 advanced as margins to his brokers, attached their bank deposit of $8,000.00, upon a specific demand for $33,000.00; was permitted to obtain a judgment for $89,000.00, and now seeks to recover $65,000.00 from the sureties on the bond given to dissolve the attachment. Can this be done? The answer depends upon several interesting questions of law. If the pleadings had not been amended the liability of the sureties would have been measured by the liquidated damages demanded when the writ issued. The questions to be determined here are (1) whether that liability can be almost doubled by what subsequently occurred without their knowledge or consent, and, (2) whether the sureties are totally discharged from any liability by reason of the amendment. At the outset, it may be remarked, that the bond in the case at

bar is not an official bond, or a bond of indemnity, or a bond to insure the faithful performance of duty, or to secure a proper accounting by persons acting in fiduciary relations, and, therefore, the rule in this class of cases, that a judgment against the principal is conclusive against his sureties as to his misconduct, and failure to properly account, has no controlling force here. In the class of cases referred to, the surety submits himself to the acts of his principal as a legal consequence of his suretyship because as the courts have said it was the intention of the parties to the undertaking to assume this liability. This rule applies to bonds of administrators and guardians, bonds of assignees for benefit of creditors, official bonds, bonds of indemnity, and other bonds of like character: Com. v. McDonald, 170 Pa. 221; Com. v. Julius, 173 Pa. 322; Yung's Estate, 199 Pa. 35; Com. v. Fidelity & Deposit Co., 224 Pa. 95; Little v. Com., 48 Pa. 337; Lindsey v. Reid, 101 Pa. 438; Masser v. Strickland, 17 S. & R. 354; Evans v. Com., 8 Watts 398. Nothing said in the present case must be understood as impairing or modifying the rule of the cases above cited and others of similar import.

The condition of the bond in the present case is to "pay the debt or damages, interest and costs that may be recovered," and follows the requirements of the act of March 20, 1845, P. L. 188. This act provides, in all cases dissolving foreign attachments, the bail shall be bail absolute, in double the amount in controversy as nearly as the same may be ascertained, conditioned as above indicated. In order to determine what the legislature intended by the requirements of this act, it is necessary to review the state of the law at the time of its enactment. At common law bail was of two kinds, bail to the sheriff, called bail below; and bail to the action, called bail above. In bail above the sureties undertook generally, or in a sum certain, that if the defendant should be convicted he should satisfy the plaintiff, or render himself into custody. The rule as to

the liability of sureties in bail above varied according to the practice in the Common Pleas and in the King's Bench. Bail above were liable in the King's Bench only for the amount sworn to and costs, while in the common pleas they were liable for the whole of the debt and costs without reference to the amount sworn to, not exceeding the penalty of the bond. The practice differing in the two courts, there was much discussion by the English judges as to which was the safer and more equitable rule. Many of the Common Pleas judges expressed the opinion that the practice of the King's Bench more equitably defined the rights of sureties, although they felt bound by precedent to follow their own practice: Sellon's Practice, pages 156-158, 189-190; Tidd's Practice, 280; Mitchell v. Gibbons, 1 Bl. H. 76; Howell v. Wyke, 4 Moore 167; Martin v. Moor, 2 Strange 922; Taylor v. Wilkinson, 5 Nevile and Manning, 189. A study of these cases will show that the practice in the King's Bench was approved by both courts, although only followed in one. This practice was best expressed in the case of Martin v. Moor, above cited. In that case the latitat was with an ac etiam for eighty pounds, the declaration was ad damnum 150 pounds, the verdict was for 104 pounds, and the question arose whether the bail should be liable pro tanto, or totally discharged. The English court, after reviewing all the authorities, decided that, as on the one hand, there was no color to subject the bail to more than they were bound in, let the demand be ever so much, so, on the other hand, there was no reason why the plaintiff should suffer by his moderation in taking bail, and, therefore, the recognizance should be considered as an agreement to pay eighty pounds, or deliver up the defendant. It is true this was the rule of the King's Bench, and not of the common pleas, but, in our state the practice in the King's Bench was approved by this court in Eldridge v. Robinson, 4 S. & R. 548, where it was held, in a foreign attachment proceeding, that

the plaintiff must stand on his original affidavit, and could not file a supplemental affidavit so as to affect the liability of sureties. This was the rule of law when the act of June 13, 1836, P. L. 568 was passed. Section 62 of this act provided that if the defendant in the attachment, shall, at any time before the money paid, put in and perfect bail to the action, in the sum demanded, or in such sum as the court shall order, the attachment shall be dissolved, and the action shall then proceed in like manner as if the same had been commenced by a capias. This section was nothing more than a legislative declaration of the existing practice as recognized by this court. In 1842, imprisonment for debt was abolished, and this necessarily abrogated the alternative condition in the bail bond, which was to surrender the body of the defendant, if the debt was not paid. This no doubt led to the passage of the act of 1845 under which the bond in the present case was given. It seems clear that the purpose of this act was to give the plaintiff bail absolute as security in lieu of the right to demand a surrender of the body of the defendant, of which right he had been deprived by the act of 1842. But, even if this was not the intention of the legislature, and the primary purpose of the act was to give the plaintiff a better security, there does not appear to be any reason for holding that it was intended to increase the liabllity of the bail. Under the act of 1836 the sum demanded was the criterion by which to determine the liability of the bail, while under the act of 1845 "the debt or damages, interest and costs" measure the liability. The words "debt or damages" evidently refer to the form of action, which may be indebitatus assumpsit for a specific amount, or trespass for damages in such sum as the facts warrant. But in either event these words, which are made a condition of the bond, relate to the sum demanded in the cause of action and the extent of the liability is necessarily measured thereby. Where the sum demanded is a sum

certain, or where the amount of the demand is stated in the affidavit of the cause of action, or where the amount is fixed by the court on application to reduce the bail, the liability of the bail is primarily governed by the sum so demanded. The act of 1845 requires bail absolute, which means, bail to which the plaintiff has consented, or which he has approved, as contradistinguished from bail de bene esse, that is, bail put in by the defendant in the first instance, subject to exception by the plaintiff afterwards. It seems clear that the purpose of the act in requiring bail absolute was to recompense the plaintiff in some degree for depriving him of the personal security of the body of the defendant, by providing that bail should not be taken unless satisfactory to him. Nothing contained in the act of 1845 warrants the conclusion that the bail is bound to pay the judgment recovered without regard to the sum demanded; but, on the other hand, the liability of the bail is to be determined by the debt, or damages, recovered upon the demand made in the cause of action. It necessarily follows in the present case that the extent of the liability of the sureties depends upon the sum demanded in the cause of action upon which the writ of foreign attachment issued. This raises another question of law and one not free from difficulty. Can the original cause of action be amended after the bond has been filed by introducing a new cause of action, or by substituting a different measure of damages? Upon questions incidental to this inquiry there is a great variety of opinion in our American cases. All authorities agree that an entirely new cause of action cannot be introduced, and some of them hold that a different measure of damages cannot be substituted. The test of the power of courts to allow amendments under our statutes was stated by Mr. Justice Duncan in Cassell v. Cooke, 8 S. & R. 268, to be "the true criterion is, whether the alteration or proposed amendment, is a new and different matter—another cause of contro-

versy; or whether it is the same contract or injury, and a mere permission to lay it in a manner which the plaintiff considers will best correspond with the nature of his complaint, and with his proof, and with the merits of his case." The authority of this case has been approved by our court as late as Holmes v. Railroad Company, 220 Pa. 189; Hodges v. McGovern, 230 Pa. 368. Another test of the right to allow an amendment was stated in Rodrigue v. Curcier, 15 S. & R. 81, to be, when the merits of the case cannot be reached without an amendment, it is to be granted, provided the cause of action be not changed. The authority of this case has been recognized in many subsequent cases. According to these tests, it may be accepted as the settled rule in Pennsylvania, that an amendment of the ad damnum clause, without changing the ground of recovery relied on, does not introduce a new cause of action. While the mere increase of the ad damnum does not introduce a new cause of action, there is a question as to whether an amendment which introduces a different measure of damages may be allowed. The question has not been squarely raised and decided in our state. This court has held that where the original claim was for actual damages caused by the unlawful cutting of timber, the statement could not be amended so as to claim double or treble damages under the statute: Dunbar Furnace Co. v. Fairchild, 121 Pa. 563; Fairchild v. Dunbar Furnace Co., 128 Pa. 485. These cases were put upon the ground that a claim for double or treble damages for cutting timber is an action for a statutory penalty, not for redress of the injury committed, and the cause of action, although arising from the same subject matter, is different from that accruing at common law. In some other jurisdictions it has been held that the two tests by which to determine whether an amendment introduces a new cause of action are: (1) Whether the same evidence will support both the original and amended declaration; and (2)

whether the same measure of damages will apply to both; and if both of these fail, the new pleadings must be held to introduce a new cause of action: Burt v. Kinne, 47 N. H. 361; Scovill v. Glasner, 79 Mo. 449; Hurst v. Detroit City Railway Co., 84 Mich. 539; Schwab Clothing Co. v. Railway Co., 71 Mo. App. 241; Kramer v. Gille, 140 Fed. Repr. 682. While the authorities are at variance, the true rule seems to be that the proposed amendment must not change the nature of the cause of action, nor destroy the identity of the original transaction, and that the damages are to be ascertained by the same standard. The amount of the damages claimed may be increased in the ad damnum, if the standard by which to measure the extent of the injury remains the same. Applying this rule to the case at bar, it is clear, that the nature of the cause of action was not changed by the amendment, nor was the identity of the original transaction destroyed, but, it is equally clear, that a different standard for measuring the damages was set up. In the original claim, the difference between the purchase price of the stocks and the highest price at which the same stocks sold up to the time of filing the statement, was stated to be the measure of damages, which were liquidated by the plaintiff upon this basis. The amendment gave plaintiff the right to recover upon the basis of the highest selling price up to the time of trial and increased his damages nearly $60,000.00. The difference between these two standards of measuring damages in speculative stocks, of rapidly fluctuating values, frequently means disaster, the present case being a good illustration. However, in the view we take of this case, it is not necessary to finally decide; (1) whether the mere substitution of a different measure of damages is the introduction of a new cause of action; and (2) whether the amendment substituted an entirely different measure of damages. In none of our cases has it been held, as it has been in some other jurisdictions, that a change

in the measure of damages alone, disconnected with any other change in the pleadings amounted to the introduction of a new cause of action. No exception seems to have been taken at the original trial to the allowance of the amendment, and no assignment of error in the present case raises the question here, so that as the record stands we do not feel warranted in finally disposing of it, because the extent of the liability of the sureties is not necessarily dependent upon whether the amendment was properly or improperly allowed.

It is suggested in the argument for appellants that it was necessary for the plaintiff to liquidate his damages before instituting the foreign attachment proceeding because the action would not lie in tort for unliquidated damages. If it was necessary for the plaintiff to liquidate his damages in order to secure the writ of foreign attachment, and he did so, it would follow as of course that all parties to the litigation, including the sureties on the bond, were bound by what the law requires, and the extent of their liability would be measured accordingly. Prior to 1905 the law was that a writ of foreign attachment would not lie for unliquidated damages arising from tort or breach of contract; but would lie in actions ex contractu when the amount of the demand was ascertained, or, though not liquidated in the strict sense, was susceptible of ascertainment by some standard referable to the contract itself, sufficiently certain to enable the plaintiff by affidavit to aver it, or a jury to find it: Carland v. Cunningham, 37 Pa. 228; Girard Fire & Marine Insurance Co. v. Field, 45 Pa. 129; Strock v. Little, 45 Pa. 416. As late as 1902 this court held in Wood v. Virginia Hot Springs Co., 202 Pa. 40, that a foreign attachment would not lie on a claim founded on tort for unliquidated damages. In this state of the law the act of March 30, 1905, P. L. 76, which amends section 44 of the act of 1836 was passed. This act povides that a writ of foreign attachment may be "issued in all actions ex

contractu, and in actions ex delicto for a tort committed within this commonwealth." The title to the act was amended "so as to make all the provisions of said act apply to certain actions ex delicto as well as to all actions ex contractu."

While the title made it apply "to certain actions ex delicto," the body of the act provided that it should apply to actions ex delicto "for a tort committed within the commonwealth." As both the title and the body of the act express the intention that a writ of foreign attachment may be issued in all actions ex contractu, and in certain actions ex delicto, meaning torts committed within the commonwealth, in which latter case the damages must of necessity be unliquidated, it would seem to necessarily follow that the act means what it says, and that the writ may be issued in all actions ex contractu, including an action for unliquidated damages, and in actions ex delicto for a tort committed within the commonwealth. The legislative history of the passage of the act as well as the express language of its provisions show conclusively that this was the intention of the legislature. Again, it has been suggested, that the writ will not lie against a foreign corporation even for a tort committed within the commonwealth under the act of 1905. To sustain this contention it is argued that foreign corporations were not within the purview of section 44 of the act of 1836, which was amended by the act of 1905, but were governed by section 76 of the act of 1836, which was not amended. This is an erroneous view of the effect to be given the act of 1836 as amended by the act of 1905. It is true that section 76 of the act of 1836 did provide for the issuance of a writ of foreign attachment against foreign corporations, either aggregate or sole, but this was merely declaratory of the existing law at that time. The action of foreign attachment in Pennsylvania is based upon one of the customs of London: Laws and Privileges of London, 113-140; Brandon on Foreign At-

tachment. The purpose of the custom was to compel the appearance of the defendant and this is also true in our state: Fitch v. Ross, 4 S. & R. 557; Albany City Insurance Co. v. Whitney, 70 Pa. 248. Both by the custom and by our statutes the writ lay against a foreign corporation. Under the custom a writ of foreign attachment lay to attach a debt owing to a corporation aggregate: Hamburgh Co., 1 Mod. 212; Mayor & Aldermen of London v. London Joint Stock Bank Co., L. R. 6 App. Cas. 393. In Bushel v. Insurance Co., 15 S. & R. 173, this court held, under our act of 1705, 1 Sm. Laws 45, that a writ of foreign attachment lay against a foreign corporation. This case was decided in 1827, nine years before the act of 1836 was passed, and no doubt this act was passed to make the rule of that case the express statute law of the state. Independently, therefore, of the act of 1836, the writ lay against a foreign corporation. Again, sections 43 to 79 inclusive, of the act of 1836, relate to the practice and proceedings on a writ of foreign attachment, any one section of which is necessarily connected with and dependent upon the other sections. These sections form practically a single statute and deal with one subject of legislation. It is a settled rule of construction that an original statute and all its amendments must be read together, and be viewed as if forming a single act: Morgan v. Hedstrom, 164 N. Y. 224; McKibben v. Lester, 9 Ohio St. 627; Harrell v. Harrell, 8 Fla. 46; Holbrook v. Nichol, 36 Ill. 161. Consequently, the act of 1905 must be read into the act of 1836 and be viewed as forming a part of it. When so understood section 76 will apply in all cases of foreign attachment in which by the amendatory act of 1905 that writ now lies.

It is strongly urged here that the allowance of the amendment about which complaint is made had the effect of discharging the sureties, and the cases cited by both sides relate very largely to this question. We

have examined with care all of the cases cited, and many not cited, and have reached the conclusion that the weight of authority is against the contention of appellants, that the sureties are totally discharged by allowing the amendment which resulted in very largely increasing the damages.    There is a great variety of opinion on the question and very good authority may be cited in support of either side of it.    Much said by the courts in the discussions relate to cases in which a total discharge of the sureties was claimed.    No doubt the courts did not look with favor upon a rule, somewhat technical, which had the effect of discharging sureties from any responsibility whatever, and this may account for the trend of decision relaxing the old rule and holding bail to liability commensurate with the extent of their undertaking.    But whatever the reason the weight of authority in modern cases is against the doctrine that the sureties in a case like the one at bar are entirely discharged from any liability because the plaintiff thought proper to increase his claim for damages.    In Langley v. Adams, 40 Me. 125, and in several cases in other jurisdictions, it was held that an amendment increasing the ad damnum, had the effect of discharging the bail from all liability.    We cannot accept this as a sound rule.    If the liability of bail is not increased by such an amendment, it does them no harm, and there is no just ground upon which they can claim to be discharged; on the other hand, the plaintiff should not be debarred from receiving the full amount to which he is entitled on the contract of suretyship, because he may have erroneously or otherwise increased his demand in the cause of action.    In its ultimate analysis the real question is what was the contract of the parties.    In the present case the condition of the bond is for the payment of the "debt or damages, interest and costs that may be recovered," but the amount of the debt or damages is measured by the sum demanded in the affidavit of the cause of action.    It is

upon that amount the penalty of the bond is calculated, and this in right and equity should fix the liability of the bail. If, in the present case, the claim subsequently introduced by way of an amendment had been originally included in the statement the bond demanded would have been $180,000, instead of $65,000. It cannot be assumed that bail who are willing to enter into a bond of $65,000 would have been willing to execute a bond for $180,000; and it would seem to be an act of gross injustice to make them liable for an amount of damages not in contemplation of the parties at the time the bond was given, which they had no reason to anticipate, and of which they had no notice. The appellee elected to liquidate his damages by demanding a specific sum in his cause of action and upon this demand the amount of the bond was fixed. Under these circumstances the sum demanded must be regarded as the basis of the contract of suretyship, and the liability of the bail is to be measured by the amount thus demanded. This conclusion is supported by reason and authority and it gives force and effect to the real intention of the parties. Under this rule the appellants are not discharged from all liability, but will be required to pay the damages liquidated by the plaintiff in the original cause of action, together with interest and costs. This was what the sureties undertook to do and they are bound according to their undertaking.

Judgment reversed and record remitted to the court below for the purpose of having judgment entered in accordance with the views herein expressed.