## Goldstein v. Obregon Distributing Company et al.

*G. D. Weiss*, for plaintiff.

*Charles F. Phillips, Charles Sinkler, J. Howard Rhoads* and *Winfield W. Crawford*, for garnishee.

·FERGUSON, P. J., June 16, 1930.—Plaintiff issued a foreign attachment against defendant, a corporation organized under the laws of the State of Arizona. A rule was taken to show cause of action and why attachment should not be dissolved. The affidavit of cause of action was filed April 7, 1930, and the matter came on for argument on April 28th. The chief reasons advanced for the rule to dissolve were *(a)* that the affidavit did not show that

defendant was a non-resident of Pennsylvania, without a place of business, office or agent within the state where or upon whom process could be served, and *(b)* that the contract was unenforceable, in that it did not show compliance with the provisions of the Sales Act.

Pending a decision plaintiff filed an amended affidavit of cause of action with leave of one of the judges of this court. A stay of proceedings had been granted when the rule was allowed, and immediately after the amended affidavit was filed a rule was taken by the garnishee to strike it off because the order permitting its filing had been inadvertently and improvidently made. In view of the stay and of the fact that amendments other than those relating to formal matters could not be made, this rule was made absolute. We justify this action by reference to the opinion in Eldridge *v.* Robinson, 4 S. & R. 548, and Com., to use, *v.* Baxter, 235 Pa. 179. The inclusion in an amended affidavit of an averment that defendant is a foreign corporation, with no place of business within the Commonwealth of Pennsylvania, is a material averment, as will later appear.

We come now to consider the original affidavit. It will be observed that while the affidavit states that defendant is a foreign corporation, it nowhere states that it has no office or agent within the Commonwealth of Pennsylvania where or upon whom service of process could be made. This is a fatal omission. The decisions on the subject are many. In Mindlin et al. *v.* Saxony Spinning Co., 261 Pa. 354, Mr. Justice Walling said: "To support the writ it is as necessary that defendant have property within the jurisdiction as that he be beyond it. Both are essential and must be averred." In Raymond *v.* Leishman, 243 Pa. 64, Mr. Justice Mestrezat said: "The foundation for the writ is that the defendant is beyond the reach of process and his property within it." The failure to make this necessary averment is sufficient to justify the court in dissolving the attachment.

The other ground urged by the garnishee is that the contract is unenforceable, there being no averment of a compliance with the provisions of the Sales Act. The affidavit avers that the contract was made in Arizona, the home state of defendant. Plaintiff contracted to purchase a large quantity of peas, a total of eighteen carloads, which defendant agreed to sell at a certain price, and which defendant failed to deliver. It is averred that it was verbally agreed between the parties that plaintiff should telegraph to defendant a "guaranty of a banking institution in the City of Philadelphia in favor of defendant in the sum of $10,000," so as to secure the payment of the purchase price. In compliance with that agreement plaintiff avers he procured a guaranty to be telegraphed to the First National Bank of Nogales, Arizona, in favor of defendant in the sum of $10,000, to secure the payment of the purchase price, and the defendant received the banking guaranty. In our opinion, the sending by telegraph of a guaranty of a banking institution is not a compliance with the provisions of the Uniform Sales Act adopted May 19, 1915, P. L. 543, and amended April 27, 1925, P. L. 310. It is provided by section 4 of the act that a contract to sell goods of the value of $500 or over shall not be enforceable unless the buyer shall accept part of the goods and actually receive the same or give something in earnest to bind the contract or in part payment, or unless a memorandum in writing of the contract be signed by the party to be charged.

It will be noted that the terms of the so-called guaranty, which was sent by telegraph, are not quoted. That its form or language was such as to enable defendant to obtain the payment of any money on demand does not appear. The import of that guaranty is left entirely to conjecture. It is

possible there may have been conditions attached to it which would make it valueless. It is possible, also, that it was not to be available until a period of time had elapsed. Whatever its terms, instead of a payment or the giving of something as an earnest of performance, it was only the substitution of a promise by a banking corporation to do or pay that which plaintiff was bound to pay. It is conceded the goods were not shipped and no part of the purchase money paid. We must conclude, therefore, that the requirements of the Sales Act have not been met. "A mere parol promise to pay or to deliver goods at a future day or a deposit of money with another to be paid over upon delivery of the goods does not constitute part payment. . . . To constitute a payment as earnest or a part payment, there must be an actual transfer or delivery of the thing or the money agreed to be given as earnest or part payment:" 27 Corpus Juris, 254. In Bouvier's Law Dictionary, Rawle's third revision, volume 1, page 964, the word "earnest" is defined as follows: "The payment of a sum of money or delivery of a thing or token, upon the making of a contract for the sale of goods, to bind the bargain, the delivery and acceptance of which marks the final and conclusive assent of both parties to the contract." In Howe v. Hayward, 108 Mass. 54, it is said that, as used in the statute of frauds, the word "earnest" is regarded as a part payment of the price. In Vitro Manuf. Co. v. Standard Chemical Co., 291 Pa. 85, the present Chief Justice used this language in respect to the phrase in the statute: "To make a contract of sale enforceable in a case like the present, where there is no sufficient writing or payment of earnest money, both actual delivery to and acceptance by the purchaser of part of the goods must appear."

We have been referred to no definite decisions in the State of Pennsylvania on the subject other than the one last quoted, and we think the reason is in the fact that the statute is explicit and requires no interpretation upon this point. The statute provides that the purchaser shall "give something in earnest to bind the contract or in part payment." The affidavit in this case fails to show that anything was given by the plaintiff, either in earnest or part payment. A vaguely described "guaranty" by a banking institution sent by telegraph is not money or thing of value which could be said to be either an "earnest" or payment. The best that can be said of it is that it is the promise of a banking institution to pay, added to the promise which plaintiff had already made, and both promises necessarily were to be performed in the future.

Were we to consider plaintiff's amended affidavit in this respect, we find it in no material way improves the situation. In the amended affidavit it is averred that a "letter of credit" was to be forwarded by telegraph, and it was agreed by plaintiff to accept that letter of credit as part payment, and in point of fact it was so received. The same criticism applies to this averment as applies to the alleged guaranty. Its terms and conditions are not set out nor the method by which defendant was to realize upon it. We know in a general way what is meant by an ordinary letter of credit. It is a document issued by one banker requesting another banker to give credit to its nominee in a certain amount of money, and when that letter is recognized, payment or payments made upon its credit are endorsed upon it. How such an obligation could be sent by telegraph and utilized after it was sent is difficult for us to understand and it was plaintiff's duty to explain. We could easily understand an averment that a banking institution in Philadelphia placed a certain sum of money to the credit of defendant in his banking institution in Arizona, but there is no suggestion that that was the arrangement. A letter of credit,

4

after all, is only a promise to pay, and a verbal agreement to accept a promise to pay cannot be binding in the face of a statute which prohibits verbal contracts without actual payment. In passing, it may be remarked that the terms of this guaranty or letter of credit, whichever it was, may afford an explanation as to why defendant did not ship the goods contracted for.

There remains to be considered the question as to the duty of the garnishee who took this rule to protect the property of the defendant in his hands, and whether or not he has the right to raise the question as to the enforceability of the contract. In Melloy's Sons *v.* Deal & Burtis, 124 Pa. 161, it was held that whether he was a bailee of the defendant or a debtor, a garnishee not only has the right, but it is his duty, to insist that no property or effects be taken out of his hands except upon valid process. In McCloskey et al. *v.* Northdale Woolen Mills et al., 296 Pa. 265, Mr. Justice Sadler held that it was the duty of the garnishees to protect the interests of the defendant. In Ogle *v.* Barron, 247 Pa. 19, the court held that there was no doubt as to the right and duty of the garnishee to raise the question as to the liability of the fund in its hands to attachment by the plaintiff.

For these reasons we are of opinion the rule to dissolve attachment should be made absolute.