## Houston Stanwood & Gamble Company v. Schneider.

(Decided May 31, 1912.)

Appeal from Kenton Circuit Court
(C. L. & E. Division).

1. **Master and Servant—Servant Acting at His Own Risk.**—Where there are two ways in which a servant may perform his duties, one of which is dangerous and the other not, and he voluntarily

chooses the more hazardous method, knowing it to be so, he does it at his own risk.

2.  Master and Servant—Defective Appliances—When Servant Does Not Assume Risk.—Where the master or someone acting in his place, promises the servant to remedy a defective appliance of which the servant has complained, the servant by continuing in his employment for a reasonable time after such promise, does not assume the risk of injury from using the defective appliance, unless the danger was so patent that no person of ordinary prudence would have continued the work.

3.  Master and Servant—Defective Appliance—When Master Estopped to Say How Servant Should Have Used Appliance.—Where the master was aware that the servant had habitually and continuously used a defective appliance in an unsafe way, although there was a safe way in which he might have used it, the master will be estopped to say that the servant should have used it differently.

4.  New Trial—New Evidence—When Will Not Warrant Granting New Trial.—The discovery of new evidence, which is merely cumulative, and is not of such preponderating effect as would enable the court to say that it probably would have changed the result of the trial, will not warrant the granting of a new trial.

ROBERT C. SIMMONS, MORISON R. WAITE, JOHN R. SCHINDEL and CARL PHARES for appellant.

B. F. GRAZIANI for appellee.

Opinion of the Court by Judge Miller—Affirming.

By this appeal The Houston Stanwood & Gamble Company asks the reversal of a judgment obtained against it by the appellee Schneider for $1,000.00 damages for personal injuries. Schneider was employed as a boiler maker by the appellant in its shops at Covington, as a handy man between a general laborer and a skilled journeyman. In manufacturing boilers appellant required large sheets of iron, which composed the sections of a boiler, and known as "belly sheets," to be carried from one portion of the shop to another, where the boiler was under construction. These "belly sheets" or plates were from four to six feet wide, and from six to eight feet in length, and quite heavy; and, in carrying them from one position to another, the appellant used an electric crane, which ran over-head, with two chains hanging down, with iron hooks about seven inches in length attached to the lower ends. These hooks were fastened to the clamps on the plates or "belly sheets;" and then at a signal to the operator of the crane the

plates were carried to the place where the boiler was under construction, about fifty feet away. This crane had previously been used, by other employes, in lifting heavy boilers and engines of great weight, and by reason of that use one of the iron hooks attached to the chain had been flattened or straightened out to such an extent as to render it defective.

A few days before the accident the hook had dropped some material it was carrying, but had injured no one. On the day before the injury, Schneider informed Evans, his foreman, of the dangerous condition of the hook, but the foreman told Schneider they were in a hurry to complete the boiler then under construction, and to go ahead and use the hook and they would fix it when they had time that they were in a hurry for the work. On the next day they were using the crane in the usual way for carrying one of these large plates through mid-air to the uncompleted boiler. Appellee had attached the hooks to the plate, and had then proceeded ahead and was standing in the boiler form ready to put the sheet in place when it arrived; but when it was carried to a position immediately over the head of appellee, and he was about to receive it, the hook let loose its hold on the plate, whereupon it fell, striking appellee on the skull, and causing the injuries complained of. As there is no complaint that the amount of the verdict is excessive, it is unnecessary to go minutely into the character of the injuries.

It is first contended that Schneider is not entitled to recover, because he negligently contributed to his injury. That question, however, was expressly and correctly submitted to the jury by the second instruction, wherein the jury was told that if it should believe from the evidence that at the time and place of the accident, Schneider was himself negligent, and that but for such negligence contributing thereto the accident would not have happened, and his injuries would not have been suffered, it should find for the defendant.

It is next insisted that the foreman's promise to fix the hook, if made, did not relieve Schneider of the duty to protect himself against the defect; and that the promise to repair can not be relied upon, because Schneider was not compelled to use the hook in the way he did, but could have used it in a different way, which was safe. In other words, it is contended that when there are two ways in which an instrument can be used, one

being a safe way, and the other a dangerous way, and both known to the operator, his choosing to use the instrument in an unsafe way is such an act of negligence upon his part as will preclude him from recovering for the injury. The rule relied upon was stated by this court as follows, in Hutchison v. Cohankus Mfg. Co., 112 S. W., 902:

"The rule is well settled that, where there are two ways in which a servant may perform his duties, one of which is dangerous and the other not, and he voluntarily chooses the more hazardous method, knowing it to be such, he does so at his own risk. 26 Cyc., 1189. Appellant could have waited until the machine stopped before attempting to remove the cotton. Instead of doing that, he voluntarily chose the more hazardous method of placing his hand in the machine while it was running. He did this at his own risk, and cannot, therefore, recover."

It will be readily seen, however, that the rule is not applicable to the facts of this case, since it necessarily implies a knowledge of the two different ways upon the part of the servant, and a voluntary choice of the dangerous method on his part. In the case at bar, Schneider had never used the hook in any different manner, and says he never had been instructed to use it differently; and these facts, connected with the promise of appellant to repair the hook, bring the case within the rule applicable to a servant's right to continue in the service after the promise to repair has been made.

That rule is stated as follows in 26 Cyc., 1209:

"Where the master or someone acting in his place promises to remedy the defect complained of, the servant by continuing in his employment for a reasonable time after such promise does not assume the risk of injury from the defect unless the danger was so patent that no person of ordinary prudence would have continued to work."

In Louisville Hotel Co. v. Kaltenbrun, 26 Ky. L. R., 209, 80 S. W., 1163, we considered this rule and its limitations at some length, and in the course of the opinion used this language:

"We do not understand the rule to be that the servant, after obtaining knowledge of the danger and, complaining of it to his employer, is precluded from continuing his service, if the employer promises to repair, unless the danger is so imminent and manifest that no

prudent person would be justified in taking the risk of the continued service."

And, in applying the rule to the facts of that case, we there further said:

"We cannot agree to the proposition that the danger in walking on the slippery floor was so apparent and imminent, that none but an utterly reckless person would have used it under the circumstances. The other employes in the laundry were walking on it at the same time, and did not fall; it was not at all probable that, if appellee fell, he would receive such terrible injury as happened to him on this occasion. This is not like the Sullivan case, where the employe was working on a narrow plank over a deep and rapid river, where to fall meant almost certain death; or that of the servant who uses a ladder without nails in the end, on ice, where it was almost certain that the ladder would slip when used, and equally certain that the fall would inflict serious injury, if not death, when it took place. At any rate, this, as was said in Hough v. The Railway, was a question for the determination of the jury. It is believed that the foregoing principles are sustained by Breckenridge Co. v. Hicks, 94 Ky., 362; Bell & Coggeshall Co. v. Applegate, 23 Ky. L. R., 470, and Reiser v. Southwestern Planing Mill & Lumber Co., 24 Ky. L. R., 796."

In Long's Admr. v. The I. C. Railroad Co., 113 Ky., 811, we reannounced the rule in the following terms:

"A servant is not called upon to set up his unaided judgment against that of his superiors. He may rely upon their orders. Ward v. Railroad Co. (23 R., 1326; 65 S. W., 2). As has been well said, the servant's dependent and inferior position is to be taken into consideration and if the master gives him positive orders to go on with the work, and the servant is injured, he may recover, unless the work was so obviously dangerous that a servant of ordinary prudence, situated as he was, would not have obeyed."

The doctrine is announced in Pullman Co. v. Geller, 128 Ky., 77; Republic Iron & Steel Co. v. Gregg, 24 Ky. L. R., 1628, 71 S. W., 900, and in many other cases.

Next, it is insisted that the court erred in instructing the jury that defendant was estopped by its knowledge of the improper use of the hook upon the part of Schneider, if its officers or agents, superior to Schneider, knew of that use, or could have known of it by the exercise of ordinary care in the supervision of the work,

and nevertheless permitted Schneider to habitually perform the work in the way he did. It is contended that while the rule of estoppel might apply if appellant's officers or agents actually knew that Schneider was improperly using the hook, it was error to extend the rule and thus estop appellant if its superior officer could only have known of that fact by the exercise of ordinary care. There is evidence in the record strongly tending to support the claim that appellant's superior officers were cognizant of the way in which Schneider used the hook; and Schneider swears he had always so used it, and had not been shown by any other way in which he could use it. The violation by a servant of a rule or order promulgated by the master is not negligence per se, and his disobedience may be excused where the rule or order is habitually violated with the knowledge and acquiescence, either actual or implied, on the part of the master, and those acting for him; and the servant will not be charged, as a matter of law, with contributory negligence in disregarding the rule.

This rule of law was annuonced in Newport News & Mississippi Valley Railroad Co. v. Campbell, 15 Ky. L. R.; 714, 25 S. W., 267, in the following language:

"The manner of the injury is established by the appellee and another witness, and a case of negligence made out unless there was such contributory neglect on the part of the appellee as prevents a recovery.

"The failure of the appellee to use a coupling stick is relied on as showing this contributory neglect, and the rules of the company introduced as evidence for the purpose of showing that those engaged in coupling cars are required to use this stick to avoid such injuries as the appellee is now complaining of.

"It seems that such rules had been adopted by the company many years prior to the accident, and at the same time evidence conducing to show that the use of the coupling-stick had been abandoned, and it is plain from the proof that its use was not required for safety and so known to the appellant, and we might add the appellant is liable for gross neglect, whether the appellee coupled his cars with or without this 'stick.'"

In L. & N. Railroad Co. v. Foley, 94 Ky., 229, we again said:

"The decisive question, then, is, whether, but for plaintiff's failure to use the coupling-stick on occasion of receiving the injury complained of, it would not have

occurred. It is proved that although a coupling-stick was, at the time plaintiff signed the writing, delivered to him, the conductor who delivered it told him the written undertaking was required as mere form. It is further shown that in order to use the stick it is necessary for a brakeman to carry it about his person in a belt, which causes more danger of falling and being injured while running on top of a car, or climbing hurriedly on or off it, than is compensated for by any advantage or security against injury it may be. Besides, the coupling-stick is proved to be generally discarded, and not used at all by brakemen on freight cars of the defendant, which fact is not only proper to be proved, as was done on trial of this case, but tends strongly to show the coupling-stick does not answer the purpose for which it was apparently designed. For the opinion of brakemen in regard to utility of an implement such as a coupling-stick, which they only have use for, and must necessarily know more about than any other class of persons, is of course entitled to great weight, because their knowledge is derived from actual experience, and after an anxious effort to properly test its value; and no evidence could speak more decisively against the value of a coupling-stick than the general disuse of it by brakemen. But it is competent for the jury in every case like this to consider the merit of the coupling-stick in determining the question of contributory negligence, as was doubtless done on trial of this case, and we need not, therefore, consider the question further.''

And, in L. & N. R. R. Co. v. Bocock, 107 Ky., 223, we further said:

''If, however, the rule was habitually disregarded by appellant or its officers superior in authority to appellee, and he was expected by his superior officer to go in between the rails while the cars were in motion, to couple or uncouple them, the rule would be no bar to a recovery in this action. 3 Wood on Railroads, section 382; L. & N. R. R. Co. v. Foley, 94 Ky., 220.

''The rule may be given in evidence, and the testimony that it was habitually violated with the assent of the company or its officers in charge of appellee, may also be admitted, and it will then be a question for the jury on all the evidence, whether appellee was in the proper discharge of his duty and free from contributory negligence in going between the rails at the time in question to uncouple the cars.''

In view of the fact that Schneider had been working in this capacity for appellant for a period of four years without correction or admonition, and had never used the hook in any other way, it is only reasonable to say that this was the only method known to him; and that if any other rule had ever been in vogue in appellant's factory, it had been abandoned by common usage and consent. Under these circumstances it is proper to say the injury was caused by the defective hook rather than by the method of its use. Since actual knowledge was therefore brought home to appellant, of Schneider's long continued use of the hook in the way he did use it, that portion of the instruction which estopped the appellant if it might have known of that use on Schneider's part by the exercise of ordinary care, if erroneous, was not prejudicial to appellant's rights.

Finally, it is insisted that appellant should have been granted a new trial, upon the ground of newly discovered evidence. Upon the trial Schneider testified that he had been injured to such an extend that he could not make money like he did when he worked in appellant's boiler shop, because he now had to take the lighter job of heating rivets, which was a "boy's" job, and not a "man's" job, and that at the time of the trial he was earning from eight to nine dollars a week at McIlvain & Speigel's. This ground is supported by the affidavit of Houston, appellant's superintendent, who attended the trial, but who was not in the court room when Schneider testified upon the subject of his wages. Houston heard the matter referred to, however, in the argument of the case, and on the same evening he learned over the telephone from McIlvain & Speigel that Schneider had been continuously in their employ since April, 1910, at wages varying from a rate of $10.00 to $11.88 a week. It appears from Schneider's counter-affidavit, however, that he had actually received wages varying from $3.00 to $10.00 per week during the period mentioned; that for the week in which the case was tried he received $9.04; that during the months of December, January and February, out of twelve weekly payments, he had received one less than $3.00, one less than $8.00, one less than $9.00, four less than $10.00, and five over $10.00. It would seem, therefore, that when Schneider testified that he was making eight or nine dollars a week, he was within a reasonable estimate of the wages actually received by him. The new evidence, therefore, was not only cumulative, but it

was not of such preponderating effect as would enable the court to say that it would probably have changed the result of the trial. Furthermore, the circuit judge rested his ruling in denying a new trial upon this ground, upon the want of diligence upon the part of appellant in not meeting this evidence of Schneider upon the trial. The trial of the case consumed about three days, and Schneider was the first witness. Appellant, therefore, had at least two days in which to obtain this evidence after it had learned of Schneider's employment at McIlvain & Speigel's, and its subsequent efforts in that respect show that it could have been obtained easily in a day. The fact that Houston, appellant's superintendent, was absent from the court room at the time Schneider testified should not alter the situation, since that information was not only easily obtainable by Houston if he had attended, but was actually known to appellant's counsel. The court's ruling upon this ground was proper, whether it be rested upon the nature of the testimony, or the want of diligence upon the appellant's part in producing it. Cahill v. Mullins, 30 Ky. L. R., 13, 101 S. W., 336. The facts of this case bring it squarely within the ruling in Johnson v. Stivers, 95 Ky., 131, where we said:

"The alleged newly discovered evidence is not of a decisive or controlling character. It is doubtful whether it would have had any preponderating influence upon another trial. (See Mercer v. Mercer, 87 Ky., 21.) Nor is it at all certain that by the exercise of reasonable diligence, the contestants could not have learned of the existence of the alleged new testimony before the trial."

This testimony, at best, was merely cumulative; and, as it did not relate to the chief issue in the case, which consisted in the alleged negligence of appellant in supplying Schneider with an insufficient and imperfect piece of machinery with which to work, it could not have been decisive of the case. Powell v. Weber-Stair Co., 125 S. W., 255; Citizen's Tel. Co. v. Wakefield, 126 S. W., 127.

Judgment affirmed, with damages.