## Hudson Engineering Company, et al. v. Shaw.

## Shaw v. Hudson Engineering Company and the Fidelity & Deposit Company of Maryland.

(Decided November 24, 1915.)

Appeals from Kenton Circuit Court
(Common Law and Equity Division).

1.  Trial—New Trial—Surprise.—A party cannot take chances on a verdict in his favor and afterwards claim a new trial on the

ground of surprise, unless the surprising evidence was called to the attention of the court and a motion made to postpone or continue the case.

2. Trial—New Trial—Newly Discovered Evidence—Diligence.—A party is not entitled to a new trial because of newly discovered evidence, unless he uses reasonable diligence to produce it at the trial.

3. Trial—New Trial—Newly Discovered Evidence—Diligence.—On an application for a new trial on the ground of newly discovered evidence, facts considered and held to show a failure of diligence, and that a new trial was properly refused.

4. Contracts—Interpretation—Use—Meaning of Word—Instructions.—Under a contract, whereby plaintiff transferred certain patents and inventions to defendant in consideration of defendant's agreement to employ plaintiff at a salary of $200.00 a month and expenses so long as defendant continued to use the patents and inventions, the word "use" means the right to use, and an instruction telling the jury that the failure of the defendant to retransfer the patents and inventions to the plaintiff, or offer to do so, amounted to a continued use of the patents and inventions, was proper.

5. Attachment—Bond—Liability of Surety—Effect of Amendments—Section 221, Civil Code.—Under a bond to discharge an attachment, conditioned for the performance of the judgment rendered in the action, the liability of a surety depends on the cause of action stated, and the amount claimed, in plaintiff's pleadings, on which the writ of attachment is issued when the bond was executed, and cannot be increased by amended and supplemental petitions, filed without notice to the surety, adding to the amount due under the contract on which suit is brought.

6. Attachment—Bond—Attempted Amendment—Discharge of Surety.—Where plaintiff sues to recover certain sums due under a contract of employment and obtains an attachment for the sums then due, the surety on a bond to discharge the attachment is not released from liability by amendments increasing the amount due under the contract and an attempt on the part of plaintiff to hold the surety liable for the amount stated in the amendments.

CHARLES A. J. WALKER and WALTER M. LOCKE for Shaw.

MYERS & HOWARD, DAVID DAVIS, HARRY L. GORDON and GORDON, MORRILL & GINTER for Fidelity and Deposit Co. and Hudson Engineering Co.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in the first mentioned case and affirming in the second mentioned case both on the original and cross-appeal.

These two appeals grew out of the same transaction and will be considered in one opinion.

Clifford Shaw invented certain apparatus for raising water and other liquids and secured patents thereon. These patents were regularly assigned and transferred to the Bacon Air Lift Company, in consideration of an alleged agreement on the part of the company to employ Shaw at a salary of $200 per month and expenses, so long as the company used said patents. In 1903 the Bacon Air Lift company sold and transferred all of its property of every kind to the Hudson Engineering & Contracting Company, which in turn sold and transferred its property to the Hudson Engineering Company. In each case each vendee took over all of the assets and assumed all the liabilities of its vendor. According to Shaw's evidence, he remained in the employ of the three companies for a number of years, receiving a salary of $200 a month and expenses for the entire time, with the exception of certain periods when he, together with other officers and employes of the company, remitted a portion of their salary to help the company out. On June 1, 1910, the Hudson Engineering Company discharged him. At that time there was due him for services and expenses $204.75. Shaw protested and asked to be continued under his contract, but the company refused to give him employment. After the termination of the contract the company kept the patents and never offered to return or transfer them to Shaw. After his discharge, Shaw was able to earn only about $75 a month.

This suit was filed on October 2, 1911. Shaw did not ask for damages for breach of the contract, but sued for the installments of salary and expense then due, amounting to $881,79, for which judgment was prayed. At the same time Shaw obtained an order of attachment, which was levied by the sheriff of Kenton county on certain property belonging to the defendant, Hudson Engineering Company. On December 5, 1911, and before plaintiff's petition was amended, the defendant, with the Fidelity & Deposit Company of Maryland as surety, executed to plaintiff a bond, by which it agreed to perform the judgment of the court rendered in the action. Subsequently, plaintiff filed various amended and supplemental petitions to recover on the installments of salary due at the time they were filed. On February 5, 1913, plaintiff recovered of the defendant, Hudson Engineer-

ing. Company, a judgment for the sum of $204.75, with interest. On October 30, 1914, he recovered a further judgment in the sum of $6,500, with interest from that date. From this judgment the Hudson Engineering Company appeals.

After judgment was rendered plaintiff sought to hold the surety company liable for the full amount of the last judgment. The trial court held that the surety company was liable only for the amount claimed in the original petition, and was not liable for any sums claimed by amended and supplemental petitions filed subsequent to the execution of the bond and without notice to the surety. From this judgment plaintiff appeals, on the ground that the surety is liable for the whole amount of the final judgment rendered in the action. The surety company prosecutes a cross-appeal, on the ground that the action of plaintiff in seeking to increase the amount for which the surety company was liable, released the surety company from all liability.

We shall first consider the appeal of the Hudson Engineering Company. A reversal is asked on the ground of surprise, newly-discovered evidence, and error in the instructions.

It is unnecessary to set out the facts on which the claim of surprise is based. When the evidence constituting the surprise was offered, the attention of the court was not called to the fact. No motion was made for a postponement or continuance of the case. Under the circumstances, a party cannot take chances on a verdict in his favor and afterwards claim a new trial on the ground of surprise. Thompson v. Porter, 4 Bibb., 70; Remley v. I. C. R. R. Co., 151 Ky., 796, 152 S. W., 973; Kentucky Distilleries & Warehouse Co. v. Wells, 149 Ky., 275, 148 S. W., 375; Liverpool & London & Globe Insurance Company v. Wright, 158 Ky., 290, 164 S. W. 952.

The newly-discovered evidence relied on is the affidavit of George R. Young, who, together with Shaw, owned an interest in the patents, to the effect that the Bacon Air Lift Company did not make a contract with Shaw which was to continue as long as the Bacon Air Lift Company used the patents, and that he would give his deposition to this effect. Accompanying the affidavit of Young is the affidavit of John J. Boyd, president of the Hudson Engineering Company, to the effect that if he had known in advance of the trial that Shaw would

claim that Young was present at the time of making the contract of employment, he would have arranged either to have had Young present and testify in the case or would have had his deposition taken. The argument is made that the petition was predicated on a contract partly in writing and partly oral. Filed with the petition was a written contract reciting that Shaw had agreed to sign the patents to the Bacon Air Lift Company, and that that company had agreed to employ Shaw and "pay him therefor a certain sum per month which had been mutually agreed upon." This contract was signed by the Bacon Air Lift Company, "by Edward A. Hosmer." Because of these facts, the defendant was led to believe that plaintiff would prove an oral contract made with Hosmer and not with the directors of the company. Not being apprised of the fact that plaintiff would claim that Young was present when the contract was made, the claim is that there is no failure of diligence on defendant's part in not having taken Young's deposition or having him present at the trial. As a matter of fact, however, plaintiff relied on a contract made with the company. It was but natural that he should prove that this contract was made with the board of directors. Defendant was not justified in assuming that the contract was made with Hosmer alone. It should have anticipated that plaintiff would attempt to prove that the contract was made with the board of directors and have been prepared to rebut this proof by the testimony of the directors. As the case was pending for three years and a half, ample opportunity was given the defendant to consult the members of the board who made the contract, and, if thought proper, to take their depositions, or have them present at the trial. A party is not entitled to a new trial because of newly-discovered evidence unless he uses reasonable diligence to produce it at the trial. Olds Motor Works v. Shaffer, 145 Ky., 616, 140 S. W., 1047; Houston, Stanwood & Gamble v. Schneider, 148 Ky., 651, 147 S. W., 371. In the present case no diligence was shown. The trial court did not err in refusing a new trial on the ground of newly-discovered evidence.

The defendant offered evidence to the effect that, with the exception of two contracts in Kentucky, it did not use the patents and inventions acquired from plaintiff after June, 1910, and that since October, 1911, it had never made any use of the patents or inventions. The

trial court instructed the jury, in substance, that the failure of the defendant to re-transfer the patents and inventions to the plaintiff, or offer to do so, amounted to a continued use of the patents and inventions within the meaning of the first and second instructions authorizing a recovery by plaintiff, if the jury believed from the evidence that defendant made a contract with plaintiff to pay him a salary of $200 a month so long as it continued to use said patents and inventions. It is insisted that this instruction was erroneous, because defendant was not liable on the contract unless it made actual use of the patents and inventions. A patent may be disposed of either by transferring the entire patent or giving a license for use of the patent. In the case under consideration the entire patents were transferred of record to the defendant. No title whatever remained in plaintiff. The transfer put it out of the power of plaintiff to use the patents and put it in the power of the defendant to make such use of the patents as it saw fit. According to plaintiff's evidence, the consideration for the transfer was the agreement on the part of the transferee to employ him at a salary of $200 a month, so long as it continued to use the patents. Under these circumstances, defendant could not escape liability on the contract of employment without restoring the consideration which it received. We, therefore, agree with the trial court that the word "use," as applied to the circumstances of this case, does not mean the actual physical employment of the patents and inventions in carrying on the defendant's business, but means the right to use such property. As the instruction referred to accords with this view, it follows that it is not subject to complaint.

The appeal of plaintiff Shaw and the cross-appeal of the Fidelity & Deposit Company of Maryland present two questions: (1) Is the surety company liable only for the amount claimed in the original petition and the affidavit for attachment, or is it liable for the full amount of the judgment, including the claim set up by amended and supplemental petitions filed after the execution of the bond and without notice to the surety? (2) was the surety released from all liability by reason of the amendments covering the installments of salary due after the filing of the original petition and the execution of the bond?

The amount claimed in the original petition and affidavit for attachment, consisting of several items, was $881.79. The order of attachment directed the sheriff to attach and safely keep so much of the property of the defendant, in the county, not exempt from execution, as would satisfy the claim of plaintiff, and $30 for the costs of the action. Before any amendment was filed increasing the amount prayed for, the bond, by which the defendant and the surety company agreed to perform the judgment of the court in the action, was executed.

Section 214 of the Civil Code is as follows:

"The sheriff may deliver any attached property to the person in whose possession it is found, upon the execution, in the presence of the sheriff, of a bond to the plaintiff, by such person, with one or more sufficient sureties, to the effect that the obligors are bound, in double the value of the property, that the defendant shall perform the judgment of the court in the action, or that the property, or its value, shall be forthcoming and subject to the order of the court."

Section 221 of the Civil Code provides:

"If the defendant, before judgment, cause a bond to be executed to the plaintiff by one or more sufficient sureties, approved by the court, to the effect that the defendant shall perform the judgment of the court, the attachment shall be discharged, and restitution be made of any property taken under it or of the proceeds thereof."

Our attention is called to the fact that defendant had the option to execute bond under either of the above sections; that where the bond is executed under section 214, it is a mere obligation for the forthcoming of the property; the lien created by the attachment, and the power of the court over the attached property, subsist and continue as effectually as if no bond had been given, or the possession never taken out of the hands of the officer; and continues until final judgment is rendered disposing of the attachment: Bell v. Western River Co., 3 Met., 557; Edwards Bernard Co. v. Pflanz, 115 Ky., 393, 24 R., 2296, 73 S. W., 1018; Hobson v. Hall, 13 R., 109, 14 S. W., 958; Lee v. Newton, 27 R., 1004, 87 S. W., 789; and no action can be maintained on a bond unless the attachment is sustained. On the other hand, where the bond is executed pursuant to section 221, all power of the court

and its officers over the attached property ceases, and plaintiff can look only to the bond. Furthermore, the attachment is discharged by operation of law, and the obligors in the bond are bound unconditionally to perform the judgment of the court in the action. In a proceeding to enforce the bond, neither the sufficiency of the grounds of the attachment nor the liability of the property levied on, nor the claims of any person to the attached property, can be considered. Hazelrigg v. Donaldson, 2 Met., 445; Taylor v. Taylor, 3 Bush, 118. It is, therefore, insisted that if a surety company desired to limit its liability it should have executed bond under section 214, but if it elected to execute bond under section 221, it is liable for the full amount of the judgment, whether based on the amount claimed in the original petition or on the amounts set up by amended and supplemental petitions. While it may be true that a paid surety is no longer the favorite of the law, and that the courts will not construe his bond as strictly as the bond of a surety for mere accommodation, yet we know of no rule of law that will extend a surety's liability far beyond what was within the contemplation of the parties at the time of the execution of the bond. Here the plaintiff was seeking to recover only the sum of $881.79 and he asked for an attachment only to that extent. The attachment itself was valid only to the extent of that sum. To release the property, the bond in question was executed. Thereafter plaintiff, without notice to the surety company, sought, by amended and supplemental petitions, to recover the additional sum of about $6,500, and was finally awarded a judgment for that amount. In our opinion, the surety company is not liable for this additional amount. The obligation to perform the judgment of the court means the judgment of the court based on the cause of action stated, and the amount claimed, in plaintiff's pleadings on which the writ of attachment is issued, when the bond is executed. In this opinion we are greatly fortified by the views of the Supreme Court of Pennsylvania, in the case of Commonwealth for Use of Charles A. Gettman v. A. B. Baxter & Company, et al., 235 Pa., 179, 84 Atl., 136, 42 L. R. A. (N. S.), 484.

On the cross-appeal of the surety company it is insisted that the attempt, by an amended petition, to increase its liability discharges it of all liability under the bond. Great stress is placed on the claim that the

amended and supplemental petitions, setting up the installments of salary that became due since the filing of the original petition, stated entirely new causes of action which increased the amount of the final judgment obtained in the action. It may be conceded that there is authority for the position, based on the old doctrine applicable to bail absolute, that any material alteration in the contract of suretyship releases the surety. Thus it is held that where one becomes bail for another, he is responsible only for the demand contained in the suit. Another demand cannot be added without defeating the contract of bail. Bean v. Parker, 17 Mass., 602; Langly v. Adams, 40 Maine, 125. In other words, the theory on which the surety is released is that its liability has been increased. In the present case we have held that the liability of the surety was not increased by the amendments. That being true, the amendments in no way affected the rights of the surety. If the amendments do not increase the surety's liability, upon what ground can it be said that the obligee in a bond should not recover all that he is entitled to under the bond, merely because, through a misapprehension of the law, or otherwise, he seeks to recover more than is due him? In our opinion, the question answers itself. Under no circumstances should the obligor in a bond be released from its obligation to pay that which he justly owes, merely because the obligee asks for more. Commonwealth for Use of Charles A. Gettman v. A. B. Baxter & Company, et al., *supra.*

The judgment in the case first mentioned in the caption is affirmed. The judgment in the second case mentioned in the caption is affirmed both on the original and cross-appeal.