**RUCKSTELL SALES & MFG. CO. v. PERFECTO GEAR DIFFERENTIAL CO.**

District Court, N. D. California, S. D.
October 5, 1928.

No. 1621.

**RUCKSTELL SALES & MFG. CO. v. STARR TRANSMISSION CORPORATION et al.**

District Court, S. D. California, S. D.
October 5, 1928.

No. K–31–J.

408

See, also, 13 F.(2d) 478.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., B. M. Kent, of Cleveland, Ohio, and Benjamin F. Bledsoe, of Los Angeles, Cal., for plaintiff.

Charles S. Evans, John H. Miller, A. W. Boyken, and Chas. O. Bruce, all of San Francisco, Cal., and Raymond Ives Blakeslee, of Los Angeles, Cal., for defendants.

JAMES, District Judge. On exceptions by defendants to report of special master recommending decree in favor of plaintiff.

The above-entitled causes were brought, one in the Northern district of California and one in the Southern district.

In the Northern district case, the Perfecto Gear Differential Company is the sole defendant. Plaintiff in that case set up first a cause of action for breach of a patent license contract. It was there charged that defendant had, in violation of the obligations assumed under the contract, made licenses to others for the manufacture and sale of a patented device of substantially the same kind as that which plaintiff was authorized to make and vend. A second cause of action set up in the Northern district case charged acts of unfair competition.

In the case brought in the Southern district, infringement of patent rights held by plaintiff under the license was charged against the defendant above named. In this case there were added, as parties defendant, Planator Gear Shift Company, a corporation, Starr Transmission Corporation, and certain individual defendants. The prayer in each case was for an injunction and damages, with the added petition in the Northern district case that defendant, Perfecto Gear Differential Company, be required to execute assignments of certain patents acquired subsequent to the date of the contract of plaintiff's license. Upon the issues being made up, a written stipulation was filed providing that both causes be referred to Harry M. Wright, Esq., as special master. The stipulation in terms recited that the master was "to take the testimony and report the same to the court with his findings and conclusions thereon, subject to a full review by the court."

The causes were so heard, and, the master's report being returned, exceptions were presented. It was then stipulated that the exceptions in both cases should be heard by the judge of this court. An order of designation regularly followed. Oral argument was made, and extensive briefs have been filed.

The master struck out the evidence offered to support the charge of unfair competition in the Northern district case, and found for plaintiff as to the cause for injunctive relief, for damages, and that defendant Perfecto Gear Differential Company be required to assign patent rights. In the Southern district case he found infringement, as alleged, and that plaintiff should have an injunction and damages.

A close examination of the record of the evidence and the argument of counsel has entailed considerable labor, because a full understanding of the mechanical devices and their relation to appropriate parts of an automobile is necessary before an intelligent construction can be given the license contract, upon the terms of which plaintiff wholly depends for a recovery in these cases.

The question as to whether the court should fully review and consider the evidence and form an independent judgment as to the rights of the parties, regardless of the conclusions of the master, is first argued. The position of the plaintiff is that the stipulation was for a trial before the master by general consent, which would make his report conclusive where the evidence shows a conflict. The defendants, on the other hand, contend that the conditional term of the stipulation that the reference be "subject to the full review of the court" requires that the court consider all the evidence and announce its own conclusions, regardless of the fact that the master's findings may rest upon conflicting evidence. It is quite plain that the conditional term referred to was inserted for some purpose; and it is evident that the intent was to reserve more than the right to except to

the report on questions of law only, which the parties would have had without reserving it. I have taken the defendants' view of the matter in considering the exceptions.

In referring to the parties, except where a more particular description is required, the plaintiff will be designated as Ruckstell Company and the defendant as Perfecto Company. Reference to other defendants will be particularly made.

Each action has the same alleged basis, to wit, the violation of a license contract made between defendant Perfecto Company and plaintiff. The main issue is brought within a small compass. The master, in a most careful report, reviewed the evidence, and quite frankly declared that his conclusions might not be free from some doubt. That he made his conclusions only after a painstaking examination of the facts and the applicable law, the text of his report adequately demonstrates.

The defendants' counsel, in their opening brief, succinctly state their position in this wise: "While defendants' exceptions are expressed in a variety of forms, they resolve themselves largely into exceptions to the master's interpretation of the contract of August 1, 1922, and the relief he recommends."

Not only does the construction to be given the contract involve an understanding of the character of the mechanical devices, license to manufacture and vend which was granted by Perfecto Company to plaintiff, it involves further an understanding of the situation of the parties respecting their separate businesses, and the circumstances attendant upon the drafting of the contract; the latter as throwing some light upon the intent of both.

The Perfecto Company, at and subsequent to the date of the contract made with plaintiff, was a dealer in patent rights. It owned and licensed rights to others, but appears not to have engaged directly in the manufacture of patented articles. In the field of mechanical art covering transmission gears used in automobiles, it was actively interested, and intended to so continue.

The devices concerned in this controversy are mainly those adapted for use in the Ford automobile. Desirable results are obtained by introducing additional reduction gears in the line of power transmission between the main set of gears with which the automobile is ordinarily equipped and the axle. A shift rod leading to a lever at the driver's seat enables the auxiliary gears to be released or locked. When locked, they revolve as a whole with the propelling mechanism of the machine, and have no effect to change power or speed. When released, they interpose their reducing action, which is to increase power at the expense of speed.

One combination of gears has acquired the name "planetary," from the fact that it consists of a central or "sun" gear about, and in contact with which revolve other gears (the number may be more or less) which move in the same circular orbit. The latter are the "planets." The main gears with which the Ford automobile was equipped until a very recent date by the manufacturer were of this precise type. It will be readily understood that the gears of such an auxiliary device, when put into use, will modify each of the speed and power effects of the normal gear equipment.

Prior to the making of the contract entered into by the defendant with the plaintiff, the evidence shows that some devices had been used on Ford automobiles having the general purpose as hereinbefore stated, and that their use had not been attended with success; in part, perhaps, because the manufacturer was disinclined to allow its agents to use or recommend to the purchasers of the automobile any such auxiliary accessories. The plaintiff here, it reasonably appears, through some acquaintance with the persons connected with the management of the manufacturing company, was able to secure co-operation of the manufacturer's agents in the marketing of the auxiliary device which it later made and sold under its contract with Perfecto Company. Under a written license contract, which was made on the 1st of August, 1922, defendant Perfecto Company gave exclusive right to the plaintiff to manufacture and sell for a period of fifteen years gear devices described in five patents which were enumerated in the contract. The contract carried the right to manufacture and sell not only the devices described in the patents specifically enumerated in the contract, but included similar devices described in pending patent applications owned by defendant Perfecto Company, and included, as the contract recites, "any improvements on said several inventions, or any of them, and which said improvements the first party (Perfecto Company) may own during the life of this license." This reservation was then made: "But it is agreed that the first party does not hereby, or otherwise, grant to the second party any license or right in respect to any transmission or speed change,

or other mechanism handled or controlled by the first party during the life of this license, *other than those comprising the features and characterized as described on page one of this agreement.*" It will be well here to refer back to page 1 of the contract. After enumerating by number the patents included in the license, the contract proceeds to declare: "Each of which relates to a multiple speed axle, comprising a combined speed change and differential gear mechanism embodied within the rear axle housing or wheels of a motor driven vehicle, and it is to be understood that the terms 'axle,' 'two speed axle,' 'change speed axle,' and 'multiple speed axle,' as hereinafter used, refer to and embrace an axle comprising said features and so characterized and also refer to and embrace a complete unit or device relating to a multiple speed axle and comprising said features and so characterized, and also refer to and embrace any device embodying the inventions or any of them disclosed in and/or patented in and by said letters patent, or any of them."

The device as manufactured by the plaintiff met with great success in the market. At the date of the hearing before the master, it was shown that the plaintiff had paid to the Perfecto Company royalties amounting to $346,000

Prior to the date of plaintiff's license contract, a patent had been issued to Ernest W. Jackson (June 5, 1923), covering a speed change device for use on automobiles of planetary construction; installation being at a point in the drive shaft ahead of the rear axle. In April, 1925, more than a year after the date of plaintiff's license, the Perfecto Company acquired by assignment the Jackson patent right. Charles E. Starr of the Perfecto Company later filed in the Patent Office applications covering improvements on the Jackson patent. Rights under these applications were assigned by Starr to Perfecto Company. The device placed in competition with the plaintiff's product was manufactured by the corporate defendants, other than Perfecto Company, under license from said defendant. It went into immediate competition with plaintiff's product, for it served precisely the same purpose and produced the same effect. Moreover it was marketed at a lesser price than that for which plaintiff's device was sold.

The good faith and fair dealing of the defendant Perfecto Company are challenged by the plaintiff. The action of defendant Perfecto Company cannot be justified unless it may be said that its contract, in defining the field covered by the license conferred upon the plaintiff, clearly reserved to it the right to do the things which it is shown to have undertaken. Something should be here said respecting the circumstances attendant upon the making of the contract. The master has called attention to the rule, sustained by authorities he cites, that a licensor owes the duty to act in utmost good faith in securing to his licensee full enjoyment of the greatest benefits derivable from the exercise of the license privilege, and that the obligation in that regard is measured by the standard of trust relations. Pertinent to this subject, it appears that the defendant Perfecto Company was active in inducing G. E. Ruckstell to organize plaintiff corporation and to undertake the manufacture and marketing of the device covered by the license contract. Ruckstell was a man of extensive experience in automotive engineering. In his negotiations with the officers of defendant Perfecto Company, he was assured of complete patent protection if he would engage in the contract which was later made. In that behalf, he testified as follows:

"Capt. Glover introduced me to Al Lobe (Glover had been unsuccessful in an attempt to manufacture a satisfactory device of the kind described in the license patents), the president of the Perfecto Gear Differential Company. Al Lobe asked me if I would be interested in redesigning that axle, and asked me if I was in a position financially to form a company to do so. He told me very clearly that the axle was protected by numerous patents owned by the Perfecto Gear Differential Company, that those patents gave a monopoly on change speed devices and auxiliary transmissions of planetary construction, and that if I would form such a company and manufacture the axle, he believed that his company would grant me a license, give me a contract for that purpose, and assured me that if I was able to build a reliable commercial product that I would have complete protection in the patent field. He told me that Mr. Charles E. Starr, of the Perfecto Company, was then in the East, that he expected him to be in Oakland shortly, and he would take this matter up further with him. Charles Starr came to Oakland, came out to my house with Mr. Lobe, and he also assured me at that time, at that meeting, that he was quite positive of the protection of the patents running to the Perfecto Company, that these patents gave complete pro-

tection on all planetary devices for a two-speed axle and auxiliary transmission, and that if I formed this company and properly designed the axle that I would be assured of the protection of these patents."

With all of the foregoing matters in mind, it must also be remembered that the defendant Perfecto Company was in the patent owning and dealing business; that a part of that business had to do with automobile transmission devices generally; and that it was known and understood that Perfecto Company was to continue in that business.

■■ I construe the reservation stated in the contract, which permits the Perfecto Company to retain and use rights respecting other classes of speed change gearing, as having been inserted for the purpose of making it clear that the usual obligation of the licensor toward his licensee was to be in a degree limited so as to permit the defendant to continue its established business; in other words, that the defendant Perfecto Company reserved the right to make and market gear sets which in kind were without the class described by the license contract, notwithstanding that such gear sets in their use might be made to produce results similar to or like those accomplished by the use of the device described in the license patents. Nevertheless, there remained the duty to make no encroachment upon the field granted to the plaintiff under the contract. And, under the rule of conduct imposed, any question of uncertainty respecting the exact limits of the rights described in the license contract would of course be resolved in favor of the licensee.

The device, as made and manufactured by the plaintiff under its license, was embodied within the rear axle housing of motor vehicles. No attachment adaptable to the wheels or axle ends at the wheels was included in the manufactured product.

Axles of automobiles are severed at the middle point, and hence are comprised of two parts, each of which is at one end attached to the wheels. The separation into two parts is made to allow the insertion of what are known as differential gears, which permit one wheel to rotate faster than the other upon curves. Around the two severed ends of the axle, at the center, is an inner housing called the differential housing, to which differential gears are pivoted. The differential gear housing constitutes a part of the direct means through which power is transmitted from the drive shaft to the axle itself. The drive shaft, at its rear extremity, carries a pinion (gear) which makes contact with what is called a master ring gear, which in turn is immovably attached to the differential gear housing.

The device, as marketed by the plaintiff under its license (described in Baker and Baker reissue patents), consists of a set of planetary gears interposed between the master ring gear and the differential gear housing, and the "planets" are journaled upon the housing itself. It seems that technically there was not the requirement under the license that the planets should be so journaled upon the differential housing, but from the evidence it appears that that was the only practicable way to use the device. Over the differential gear housing, and over the entire axle proper, is a case which incloses those parts and which, under the question presented here, constitutes either all or a part of the "rear axle housing."

The Perfecto Company's device, which is complained of, consisted of a set of planetary gears installed just ahead of the point where the pinion makes contact with the master ring gear. Between that point and the pinion are roller bearings upon which the drive shaft revolves, and a tubular casing (torque tube) surrounds the drive shaft up to the universal joint which is forward of the axle and under the body of the automobile. This shaft casing is securely bolted, at the location of the roller bearings adjacent to the pinion, to the projected part of the axle housing first mentioned. There is therefore a casing made continuous (but in separate parts) from the universal joint back to the axle shafts and surrounding those shafts and the differential bearing housing. On the side of the Perfecto Company it is argued that all casing parts ahead of the location of the ball bearings referred to constitute no part of the rear axle housing, and that, so considered, the location of defendant's appliance at the point specified constitutes no violation of the license contract. There was evidence given both ways on the subject by persons skilled and experienced in the art of automobile construction. It is clear enough from the testimony that the propeller shaft and its attendant casing, from the rear to the universal joint, is properly classed as a part of the "rear axle system." There was testimony which supports the conclusion that, strictly considered from the standpoint of automobile mechanics, the rear axle housing is only that which surrounds the axle parts and the differential gear casing, extending up to the point where the roller shaft bear-

ings are placed. As before declared, and considering the relations of the parties, a purely technical interpretation is not allowable if the facts justify one which includes more. And if the cases depended upon a decision of this single point, a decree in plaintiff's favor might be warranted.

But there is a further term of description that defendants' device must answer to before it is within the restraint of the license. Is defendants' device "a combined speed change and differential gear mechanism"?

"The Ruckstell axle," counsel for defendants declare, "is a combination of differential gears with change speed gears. The Planator, as installed, is merely an aggregation of differential gears and change speed gears, and it does not infringe the combination patent claims covering the Ruckstell axle." The special master seems to have been inclined to the view that there was no true combination, in a patent sense, between the Ruckstell device and the differential; neither between Perfecto's device and the differential. He expressed his opinion of that matter by saying: "If, as the witness Fouts argues, the assembled Planator is in aggregation with the Ford differential, the same argument would make the Ruckstell device in aggregation with the differential." Counsel for plaintiff do not concede that the Ruckstell device is not in combination with the differential. In the Baker reissue patent, the inventor described his invention as "the novel construction of a change speed gear and the adaptation and combination of such gear with a differential mechanism. * * *" The applicable claims of his patent fix the device as being in combination with the differential. As already stated, the ordinary rear power construction of the Ford automobile consists of the pinion attached to the drive shaft and meshed with the master gear which surrounds and is attached to the differential case, the differential mechanism inside the case, and the axles geared therewith at their middle point. In the Ruckstell device the master gear is attached first to a special casing which carries an inner ring gear in contact with the planetary gears, which are in turn journaled directly on the main differential casing. There is therefore successive action from the master gear through the device to the differential power gears. I am of the opinion that there is a true combination, in a patent sense, exhibited by that construction. Appreciat-

ing that, in order to come within the prohibitory terms of the contract, the Planator device must, in its arrangement and action, answer also to a definition of true combination with the differential, plaintiff argues that such combination is effected whether or not the planetary mechanism is stationed away from and outside the master gear. It is argued that the connection and association is just as complete, notwithstanding that there is interposed between the Planator device and the master gear a section of the drive shaft with the driving pinion at its end. Plaintiff must admit that the immediate effect of the power impulse transmitted through the Planator device is upon the rear section of the drive shaft; that the operation of that drive shaft through the pinion and master gear and differential is not changed in any respect by the introduction of the Planator. Can it be said that, if the Planator device were installed ahead of the universal joint (and no witness seems to assert that such an installation would be mechanically impracticable), such device in its operation would be in combination with the differential? If its action is in combination, is not that combination separately and immediately with the two ends of the severed drive shaft? Is Perfecto in combination with the differential in any better sense than is the main transmission at the head of the drive shaft?

I think the comparison made is clearly allowable under the admitted facts, and after much study I am not able to agree that the Planator device is in combination with the differential mechanism. Unless the descriptive and limiting terms of the contract are made to read in a different sense than that which the language used imports, defendants have placed themselves within the field of their right under the agreement as written. If the license contract had been made to cover *any* planetary speed change device, there would have been no question that defendants have violated the rights affirmed to their licensee. We have here nothing to do with the question of business ethics, but rather one of contract obligation; a case where the contract terms set bounds to the business conscience. It is no doubt true that neither of the parties at the time thought of the possibility that a device such as was by Jackson designed and by Starr improved could be made available to compete so closely with the Ruckstell mechanism.

The conclusions reached go to the foun-

dation of plaintiff's case in each action. It seems unnecessary, therefore, to enter upon a discussion of subsidiary points made, or to consider particularly the several applications of the defendants for special findings on particular matters. I agree with the master in his determination that plaintiff was not required to submit the controversy to arbitration for the reasons he has stated. I agree with his conclusion as to the kind and measure of relief allowable, if the plaintiff had proved a sufficient case.

The report of the master, after a full review of the evidence by the court, is disapproved on the main question hereinbefore discussed.

Decree is ordered to be entered in favor of defendants.