Arthur G. Klein, J.
This case was tried before me without a jury. Findings of fact and conclusion of law were waived.
The action was commenced by one Martinus Caron, who unfortunately died subsequent to the trial but before a determination could be handed down. The executor of his estate has assigned the claim to the present plaintiff.
*821 This is an action to recover “ compensation” for the use of patented processes covered by certain Cuban patents owned by the original plaintiff. The compensation sued for is claimed to be due under a written contract by which the original plaintiff granted to a Dutch company, N. V. Billiton Maatschappij (referred to as “ Billiton ”), which was formerly the parent company of the defendant (referred to as “ N.P.C.”) a license to use and exploit the processes in question. Billiton, at the time the contract was entered into, was anxious to contract with the General Services Administration of the United States Government (referred to as “ G.S.A.”), for the operation of a nickel plant at Nicaro, Cuba.
The agreement, dated May 16,1951, grants to the defendant’s assignor, Billiton, “ the exclusive right to use and exploit, in the widest sense, but exclusively in Cuba”, the processes in question. The processes relate to the extraction of nickel and cobalt. The question of cobalt production is not here involved.
Under the terms of the contract the original plaintiff was employed as consultant to Billiton at an annual salary of $15,000, and in addition was to be paid for the “ use ” of the processses at the rate of .0015 per English pound of nickel produced in excess of 25,000,000 pounds annually. The agreement is terminable on one year’s notice to the original plaintiff. The defendant assumed the obligations of the contract.
The sole question here is as to defendant’s liability to the plaintiff under the contract, whether or not Caron’s processes were used in the production of nickel at the plant in question. There is no claim that said processes were actually so used.
As pointed out by Mr. Justice McNally, in a motion for summary judgment, the term “ use ” in the contract does not conclusively lead to a construction requiring the physical employment of the patents, and the circumstances might indicate its meaning to be the equivalent of “ the right to use ” (citing Hudson Eng. Co. v. Shaw, 167 Ky. 27, 32). However, I do not find such circumstances to be present here.
It is clear from the testimony of plaintiff’s witness Wijnans, as well as from other evidence in the case, that Billiton made its proposal to the G. S. A. based upon its acquisition and use of the Caron processes in Cuba. Billiton was apparently convinced that the use of these processes would improve the production reached by previous operators of the plant in question. Twenty-five million pounds had been the maximum production of a predecessor operator and that was the basis for the provision in (this contract that Caron was to receive a royalty on any excess produced over that amount.
*822 The defendant’s position that the royalties set forth in the contract were to be paid only in the event that the Caron processes were actually used is borne out by plaintiff’s Exhibits 6 and 8. Exhibit 8 is a copy of a cablegram sent to Billiton by its New York attorneys on April 17, 1951, suggesting revision of the proposed contract to provide for royalties only on the difference between the previous Freeport production and production under the Caron process.
Exhibit 6 is a letter from Billiton to the same attorneys dated March 31, 1952, referring to the contract executed the previous year, and stating that ‘ ‘ the royalty payment to Professor Caron was in conformity with the suggestion contained in Mr. War-field’s cable to us of April 17,1951, intended to be based upon the increase in the extraction obtained by the Caron process as compared with the process formerly used.” Obviously no increase could result from the Caron process unless it was used.
The testimony of defendant’s witness Williams, supports the construction of the contract advanced by the defendant. This witness was the director of one of the divisions of G. S. A. and a member of the nickel and magnesium committee of that agency. He conducted negotiations with Billiton and its agents with reference to the reactivation of the plant in Cuba. He testified that in its endeavor to increase the production of nickel the Government was interested in any process which might produce such increase. This bears out the testimony of plaintiff’s witness Wijnans that Billiton would not have made its proposal to the Government if it did not have the right to use the Caron processes.
The testimony of this witness, Wijnans, even if it be admissible as bearing on the intent of the parties at the time the contract was executed, can be given no weight beyond that (Eustis Min. Co. v. Beer, Sondheimer & Co., 239 F. 976, 984; Krstovic v. Van Buren, 235 N. Y. 96). It does not have the effect of validly contradicting the testimony of defendant’s witnesses and the documentary proof bearing on the intention of the parties, which I find to be that royalties would be paid to the original plaintiff only if his processes were actually used.
Furthermore, in seeking out the intent of the parties to the contract, the agreement must be construed most favorably to the licensee, particularly where, as here, the agreement was drawn by the licensor (Lewis Invisible Stitch Mach. Co. v. Popper, 33 F. Supp. 812, affd. 118 F. 2d 191; Ruckstell Sales & Mfg. Co. v. Perfecto Gear Differential Co., 28 F. 2d 407, 410).
The plaintiff has failed to establish that the Caron processes were used in the production of nickel, and the uncontradicted *823 testimony of defendant’s witness Dean shows that there was no failure on the part of defendant to make reasonable efforts to exploit the Caron processes.
Judgment is accordingly awarded to the defendant and the complaint is dismissed on the merits on the facts and on the law.
Motions on which decision was reserved are denied.
The foregoing constitutes the decision required by the applicable provision of the Civil Practice Act.
Thirty days ’ stay and 60 days to make a case.